NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

MIRJANA BOURKE, *Petitioner/Appellant,*

*v.*

JON RICHARD BOURKE, *Respondent/Appellee.*

No. 1 CA-CV 14-0126 FC
FILED 8-13-2015

Appeal from the Superior Court in Yavapai County
No. P1300DO201200080
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**

COUNSEL

Musgrove Drutz Kack & Flack, PC, Prescott
By Mark W. Drutz, Jeffrey Gautreaux
*Counsel for Petitioner/Appellant*

Nirenstein Garnice, PLLC, Scottsdale
By Victor A. Garnice
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Peter B. Swann joined.

---

**C A T T A N I**, Judge:

¶1 Mirjana Bourke ("Wife") appeals from a decree of dissolution denying her request for spousal maintenance, modifying temporary spousal maintenance, dividing the parties' community property, and awarding attorney's fees to Jon Richard Bourke ("Husband"). For reasons that follow, we affirm the denial of spousal maintenance and modification of temporary spousal maintenance. We vacate, however, the superior court's order regarding property allocation and its award of attorney's fees to Husband and remand to recalculate/clarify those awards.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 The parties married in 1994. In January 2012, Husband told Wife he intended to pursue a divorce, and that same month, Wife filed a petition for dissolution. Wife was a graduate student at the time and was unemployed. Husband worked out of state as a pilot for a government contractor earning approximately $10,000 per month. By the time of trial, Wife had started working for a defense contractor in Kosovo, earning $4,000 per month, in addition to room and board in military-style housing.

¶3 The parties owned a home in Prescott, but Husband had not lived there since early 2009. Wife extensively remodeled the home beginning in the months prior to filing for divorce and continuing during the dissolution proceedings.

¶4 The superior court concluded that Wife dissipated significant community funds remodeling the marital home without increasing its value. To account for Wife's dissipation of community assets, the court awarded Husband the remaining liquid assets and a condominium, and Wife received the marital home, offset by the community credit card debt.

¶5 Prior to trial, the superior court awarded Wife temporary spousal maintenance of $2,800 per month beginning August 2012, which she received for a period of 17 months. At the dissolution trial, the court denied Wife's request for spousal maintenance and ordered Wife to repay

a portion of the temporary spousal maintenance, concluding that Wife was only entitled to $2,000 per month for 12 months, rather than $2,800 per month for 17 months.  Finally, the court awarded Husband $9,000 in attorney's fees because of unreasonable positions Wife took during the litigation.

¶6        Wife filed a notice of appeal from the decree before the court entered a final award of attorney's fees to Husband.  After the superior court awarded fees to Husband, Wife filed a timely amended notice of appeal.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).[1]

## DISCUSSION

### I.  Spousal Maintenance.

¶7        Wife contends that the superior court abused its discretion by denying her request for future maintenance.  She argues in particular that she lacks sufficient property to meet her reasonable needs, and that as a result of the length of the marriage, she is unable to be self-sufficient through appropriate employment.

¶8        We review the superior court's decision to award or deny spousal maintenance for an abuse of discretion. *In re Marriage of Berger*, 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App. 1983).  Under A.R.S. § 25-319(A), the superior court may grant a maintenance order for either spouse if the spouse seeking maintenance: (1) "[l]acks sufficient property . . . to provide for that spouse's reasonable needs," (2) "[i]s unable to be self-sufficient through appropriate employment . . . or lacks earning ability in the labor market adequate to be self-sufficient," (3) "[c]ontributed to the educational opportunities of the other spouse," or (4) "[h]ad a marriage of long duration and is of an age that may preclude the possibility of gaining employment adequate to be self-sufficient."

¶9        The superior court's ruling under § 25-319(A) is supported by the record.  Wife was well-educated in various fields, and she had no physical or health issues preventing her from obtaining regular employment.  Wife earned a master's degree focusing on project management for defense contractors, and she was previously able to obtain lucrative positions overseas.  By the time of trial, Wife had obtained gainful employment as a linguist for a defense contractor in Kosovo.  Wife also

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version.

received the house and a car, both debt-free, thereby minimizing her living expenses in the event she were to choose to remain in Prescott and pursue different employment.

¶10        Wife nevertheless contends she is entitled to spousal maintenance because her employment contract in Kosovo was for only one year and she was not awarded any liquid assets in the decree, and because Husband earns significantly more than she does. Wife further argues that she only accepted the job in Kosovo because she was financially destitute and that she should not be required to take a position far from home. But Wife's desire to live in Prescott is not determinative of her need for spousal maintenance.    And the evidence established that Wife's one-year employment contract will be extended if the employer's own defense contract is still in force, and that her income of $4,000 plus housing expenses was sufficient to satisfy her reasonable expenses, which her financial affidavit at the time of trial fixed at less than $2,200 per month. Moreover, Wife's skills and educational background will presumably enable her to find similar positions once her current position ends.

¶11        Wife cites several findings that she claims establish that the denial of spousal maintenance was improperly intended to penalize her. She references in particular the court's findings that (1) she failed to include her undergraduate degree for nursing on her three financial statements, (2) her employer indicated its intent to renew her one-year contract if possible, and (3) she did not want to travel to the primarily Muslim town near her employment because of safety concerns. But these findings are supported by the evidence and in any event do not establish that the superior court relied on an improper basis for denying spousal maintenance.[2] Accordingly, the superior court did not abuse its discretion by finding that Wife did not qualify for spousal maintenance under § 25-319(A). *See Schroeder v. Schroeder*, 161 Ariz. 316, 321, 778 P.2d 1212, 1217 (1989) (describing the goal of rehabilitative support as to achieve financial independence for both parties). We thus affirm the denial of spousal maintenance.

---

[2]        Although the superior court incorrectly stated that Wife failed to request a specific amount or specify the length of time for which she was seeking support, this was not the reason the court gave for denying spousal maintenance.

## II.     Modification of Temporary Spousal Maintenance.

**¶12**          Wife contends that the superior court abused its discretion by retroactively decreasing her temporary spousal maintenance of $2,800 per month for 17 months to $2,000 per month for 12 months.  The court found that Wife's excessive and abnormal expenditures "establish[ed] conclusively that the temporary spousal maintenance award was excessive[]" and that one year was a reasonable period of time to find employment.  The court further ordered Wife to repay the amount that she had received in excess of $24,000 in temporary spousal maintenance.

**¶13**          In determining whether a retroactive modification is warranted, the court must consider whether there were substantial and continuing changed circumstances.  *See* A.R.S. § 25-315(F)(2) (temporary orders may be modified upon a showing of facts necessary to revoke or modify a final decree under § 25-327); A.R.S. § 25-327(A) (spousal maintenance may be modified or terminated upon a showing of substantial and continuing changed circumstances).  Under A.R.S. § 25-315(F) and Arizona Rule of Family Law Procedure 81(A), "the family court retains its authority to modify temporary support nunc pro tunc" and need not make an express finding of good cause. *Maximov v. Maximov*, 220 Ariz. 299, 301, ¶¶ 7–8, 205 P.3d 1146, 1148 (App. 2009).  We review a modification of temporary support for an abuse of discretion.  *Id.* at 300, ¶ 2, 205 P.3d at 1147.

**¶14**          Here, the superior court's temporary order found that Wife needed support to allow her time to find employment, noting her recent success in obtaining a graduate degree.  Wife was healthy, well-educated, and less than a year after the date of the temporary order, had found a job consistent with her graduate degree, earning enough to meet her reasonable needs.  The court also noted that Wife's reasonable expenses were only $2,000, and that her excessive expenditures established that the amount of the initial award was excessive.

**¶15**          Wife's claim that the temporary spousal maintenance award did not meet her reasonable needs is not supported by the evidence.  Wife spent a portion of her spousal maintenance on several household projects that the court determined were unnecessary and unreasonable.  Wife also maintained a separate bank account in which she deposited her spousal maintenance payments, and that account had funds remaining at the time of trial.

¶16 Wife asserts that under *Maximov*, modification of a temporary support award is only warranted when the paying spouse is unable to afford the support payment. *See id.* at 301, ¶ 8, 205 P.3d at 1148. But the holding in *Maximov* is not limited to the specific facts of that case and does not preclude modification when there is evidence—as here—that a spouse has obtained employment paying enough to meet the spouse's reasonable needs. The record supports the superior court's conclusion that there was a reasonable basis for modification, and we thus affirm the modification of temporary spousal maintenance and the order that Wife repay Husband for the $23,600 he overpaid. [3]

## III.    Wife's Excessive Expenditures.

¶17 The superior court rejected Wife's contention that all of the expenditures on the marital home were reasonable and necessary, and the court estimated that Wife's unnecessary expenditures totaled approximately $80,000. Wife argues this was an abuse of discretion, and that, even if she did commit waste, the property allocation was nonetheless inequitable and an abuse of discretion.

¶18 "When there is waste or dissipation of marital assets by one spouse, the trial court may, when apportioning the community property, award money or property sufficient to compensate the other spouse for that waste[]" under A.R.S. § 25-318. *Hrudka v. Hrudka,* 186 Ariz. 84, 93, 919 P.2d 179, 188 (App. 1995). We review the allocation of community property for an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13, 167 P.3d 705, 708 (App. 2007).

¶19 The superior court concluded that Wife's expenditures were not for her reasonable needs and diminished the community estate by approximately $80,000. The court determined that Wife's remodeling did not increase and in fact reduced the value of the marital home by $17,500. The court also found that Wife spent $53,384.96 from the parties' joint IBM account and $33,100.67 from the joint Schwab account in the months following the parties' decision to file for divorce, and that Wife charged a

---

[3]    Wife also asserts that the final decree operated as a horizontal appeal from the temporary order. However, § 25-315(F) allows retroactive modification of temporary orders. The cases Wife cites regarding horizontal appeals do not involve temporary orders and are thus inapposite.

total of $8,806.06 on the joint American Express card and $10,866.56 on the joint Visa card after the parties decided to divorce.

¶20 Wife contends the remodeling expenditures were reasonable because they were designed to improve the marital home. Some of Wife's expenditures could be characterized as reasonable and necessary, such as replacing an old water heater, replacing a door with a defective lock, or replacing a damaged roof. But Wife spent excessive amounts to replace all the doors in the home despite evidence that only one door needed repair. Wife also spent $1,000 to relocate a water heater, which was not a necessary expense. And although an insurance company paid $10,000 to replace the roof on the house, Wife decided to spend several thousand dollars more to install a metal roof.

¶21 Notwithstanding Wife's expenditures on the house, a certified real estate appraiser testified that several the net result was a reduction in value. Although Wife testified that her expenditures were reasonable, we defer to the superior court's assessment of witness credibility and resolution of conflicting evidence. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13, 972 P.2d 676, 680 (App. 1998). The evidence thus supports the court's conclusion that the majority of Wife's expenditures on the marital home were excessive and unnecessary.[4]

¶22 Wife contends many of the expenditures were prior to the date of service of the preliminary injunction and, therefore, do not constitute waste. Misuse of community assets constitutes waste regardless whether the spouse made excessive expenditures during the marriage or while the preliminary injunction was in effect. *See Martin v. Martin*, 156 Ariz. 452, 455–56, 752 P.2d 1038, 1041–42 (1988) (holding that the superior court may compensate one spouse for the misuse of community property during the marriage to offset the value of the lost property); *Gutierrez*, 193 Ariz. at 346–47, ¶¶ 3, 8, 972 P.2d at 679–80 (affirming finding of waste based on excessive and abnormal expenditures during marriage).

¶23 Wife argues that the court ignored evidence of Husband's dissipation of community assets. Wife contends Husband's purchase of a condominium in Georgia and his withdrawal of $12,000 from the joint Schwab account constituted waste. Husband testified that he used $59,900

---

[4] Contrary to Wife's argument, the court did not conclude that all of her expenditures were excessive, because Wife spent more than the $80,000 the court deemed to be waste. Thus, the superior court necessarily found that some of Wife's expenditures were appropriate.

from the joint IBM account as collateral to purchase the condominium. The purchase of a modest condominium was a reasonable living expense under the facts of this case. *See* A.R.S. § 25-315(A)(1)(a). Husband withdrew the $12,000 remaining in the joint Schwab account when he learned that Wife had withdrawn $33,000 from that account. The superior court properly treated both accounts as community property in the property allocation and allocated the amount withdrawn to each spouse.

¶24 Wife also argues that her use of the joint funds and credit cards was reasonable because Husband conceded that she had access to the parties' joint accounts and Husband did not begin paying temporary support until August 2012. Using community funds for reasonable and necessary living expenses is permitted, but the community was entitled to compensation for Wife's excessive or abnormal expenditures. *See* A.R.S. §§ 25-315(A)(1)(a), -318(C). Thus, the fact that Husband agreed Wife could access the joint accounts does not justify Wife's excessive expenditures, and the evidence supports the superior court's conclusion that Wife wasted approximately $80,000 of community assets.

## IV.  Property Allocation.

¶25 Generally, all community property "should be divided substantially equally unless sound reason exists to divide the property otherwise." *Toth v. Toth,* 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997); *see also* A.R.S. § 25-318(A). The court may consider Wife's excessive expenditure of community assets and the reduced value of the marital home in determining an equitable property allocation. *See Flower v. Flower*, 223 Ariz. 531, 535, ¶ 14, 225 P.3d 588, 592 (App. 2010). We review the property allocation for an abuse of discretion. *Id.*

¶26 As stated above, we affirm the conclusion that Wife's expenditures were excessive and unreasonable. Husband, however, received significantly greater community assets than Wife, even after taking into account Wife's dissipation of community assets. According to the superior court's calculations, Wife received $246,719.08 in community assets, which included the reduced value of the marital home and Wife's share of the joint accounts she dissipated in 2012. The court also ordered Wife to pay two credit card debts totaling $20,806.06, thereby reducing Wife's net property allocation to $225,913.02. Husband appears to have received at least approximately $260,000 in community assets and no debts, although it is not clear from the record how the superior court treated Husband's encumbrance of the IBM account used to secure payment for the Georgia residence.

¶27 Although the superior court has discretion to allocate a greater amount to Husband based on Wife's waste of community property assets, we are unable to ascertain from the record the total amount allocated to Husband and to Wife and the amount of waste charged to Wife. Accordingly, we are unable to determine whether the superior court abused its discretion in making an arguably inequitable division of assets. On remand, the court should determine a beginning balance of assets at the time of dissolution and divide the assets equally. The court has discretion to increase Husband's share of remaining community assets to ensure that he receives an equitable share of what would have been the value of the estate but for Wife's waste. The court should also clarify the initial value of the assets listed on the court's worksheet, such as the IBM Employees Credit Union account and specify whether funds from that account or another source of community funds were used or encumbered to purchase the Georgia condominium. The court should also subtract any credit card debts allocated to Wife from the amount deemed to have been awarded to her. And to the extent amounts are credited as having been given to Wife, e.g. $33,100.67 spent by Wife from the couple's Schwab account, those amounts should not be "double counted" as waste.

## V. Attorney's Fees Award.

¶28 The superior court awarded Husband $9,000 in attorney's fees, finding Wife took unreasonable positions (1) in seeking spousal maintenance in light of her education and employment, (2) in claiming her reasonable needs included the excessive amounts spent on remodeling the marital home, and (3) suggesting that Husband should have objected to Wife's expenditures. We review the superior court's decision to award attorney's fees for an abuse of discretion. *In re Marriage of Robinson,* 201 Ariz. 328, 335, ¶ 20, 35 P.3d 89, 96 (App. 2001).

¶29 In light of our ruling remanding for a recalculation/clarification of the asset distribution, we vacate the award of attorney's fees to Husband and remand for a redetermination of that amount. Counsel for Husband conceded at oral argument that no adequate explanation was given for the amount of the award. Moreover, we note that it is unclear from the record how the superior court calculated the amount of $9,000 in attorney's fees for Husband. Although the court made several findings regarding the legal basis for attorney's fees, no calculation or explanation of the amount was provided.

## VI.     Attorney's Fees and Costs on Appeal.

¶30     Both parties request an award of attorney's fees under A.R.S. § 25-324.  The parties did not take unreasonable positions on appeal, and the record does not reflect the parties' current financial resources. Accordingly, we decline to award fees and costs to either party.

## CONCLUSION

¶31     We affirm the denial of future spousal maintenance, the modification of temporary spousal maintenance, and the superior court's finding of waste.  We vacate the property allocation award and the award of attorney's fees and remand for a recalculation/clarification of those amounts.



Ruth A. Willingham · Clerk of the Court
FILED: RT