IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MICHAEL E. HAMMETT SR., *Petitioner/Appellee*,

*v.*

ANN PEARL JOY CUIZON HAMMETT, *Respondent/Appellant*.

No. 1 CA-CV 18-0632 FC
FILED 10-29-2019

Appeal from the Superior Court in Maricopa County
No. FN2015-071793
No. FN2017-002640
(Consolidated)

The Honorable Lori Horn Bustamante, Judge
The Honorable Frank W. Moskowitz, Judge

**VACATED IN PART AND REMANDED WITH INSTRUCTIONS**

COUNSEL

Lincoln & Wenk PLLC, Goodyear
By Michael Lincoln
*Counsel for Petitioner/Appellee*

DeRoon & Seyffer, Phoenix
By Charles R. Seyffer
*Counsel for Respondent/Appellant*

—————————————————

**OPINION**

—————————————————

Presiding Judge Paul J. McMurdie delivered the opinion of the Court, in which Chief Judge Peter B. Swann and Judge Diane M. Johnsen joined.

—————————————————

**M c M U R D I E**, Judge:

¶1      Ann Hammett ("Wife") appeals from the property distribution in the decree annulling her marriage to Michael Hammett ("Husband") and the superior court's subsequent orders. We hold parties acquire community property and debt even during a marriage that results in an annulment; and, when terminating the marriage, the court must dispose of such assets and debt under Arizona Revised Statutes ("A.R.S.") section 25-318, to the extent applicable. Because the superior court and the parties assumed the couple had acquired no community property, we vacate the decree's property disposition and remand for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL BACKGROUND**

¶2      Husband met Wife while she lived in the Philippines. The couple married in Nevada in November 2009, after Wife obtained a fiancé visa. *See* 8 U.S.C. § 1101(a)(15)(K)(i) (2006). In November 2015, Husband, as the sole signatory, obtained a loan for $78,600, secured by a house that was his separate property (the "Loan"). That same month, Husband purchased a condominium for $58,000, titled in both spouse's names as community property with the right of survivorship. Less than two weeks later, Husband petitioned for the dissolution of the parties' six-year marriage.

¶3      In August 2016, Wife moved for a temporary order for spousal maintenance. She claimed that she was unable to work because of a car accident, Husband had been supporting the couple for the duration of their marriage, and he had ended all financial support earlier in the year. The court discussed Wife's motion during a resolution management conference and ordered the parties to exchange financial affidavits. At the conference, Husband asserted—for the first time—that Wife was married to another man when the couple married.

¶4      After Wife submitted her financial affidavit, over Wife's objection Husband moved to dismiss his petition for dissolution. He argued

that the court must dismiss the dissolution action because of the "mutual fraud committed by both parties" and asserted that Wife was still married to her first husband. He alleged that before their marriage in 2009, the parties conspired to have a fake death certificate produced to allow Wife to enter the United States with a fiancé visa. Husband submitted emails between him and a third party from 2008 in which he expressed his frustration with the time and cost of an annulment in the Philippines, and solicited the help of the third party to either "find[] a judge and pay[] him off" or create a fake death certificate.

¶5        The court held an oral argument on Husband's motion in February 2017—more than a year after Husband petitioned for dissolution. Because the parties presented evidence outside of the pleadings, the court treated the motion to dismiss as a summary judgment motion. *See* Ariz. R. Fam. Law P. 32(B) (2006) (repealed effective January 1, 2019, see now Ariz. R. Fam. Law P. 29 (2019)). Husband argued that because Wife's marriage to her first husband had never been dissolved, their subsequent marriage was invalid. Husband asserted that even though Wife had unsuccessfully tried to locate her first husband for 19 years before she married Husband, she had failed to comply with the law in the Philippines to have her first husband presumed dead and the marriage dissolved. Accordingly, Husband argued Wife's first husband "must be presumed to be alive."

¶6        The court dismissed the dissolution petition based on Wife's admission that she failed to have her first husband presumed dead, and her previous marriage annulled. The court held Wife did not correctly dissolve

her first marriage under Philippine law, which rendered her subsequent marriage to Husband invalid.[1]

¶7        In March 2017, Husband petitioned for annulment. Before the resulting trial, the parties agreed that Husband's house would remain his separate property and that each spouse would "keep their retirement accounts and bank accounts in their own names" and "the debts in their own names." The court found that the parties knowingly, intelligently, and voluntarily entered into a binding agreement that was fair and equitable under Arizona Rule of Family Law Procedure ("Rule") 69.

¶8        The parties then presented evidence on the remaining unresolved claims—mainly, their interest in the condominium, the Loan, and Wife's allegation that she contributed over $30,000 in repairs and improvements to the condominium after service of the dissolution petition. After the trial, the court ruled that "all community property rights and obligations acquired by marriage are void *ab initio* with respect to both parties as to all property, income, and liabilities received or incurred from the date of the annulled marriage." The court then ordered that the parties owned the condominium as tenants in common and directed Wife to buy out Husband's one-half interest in the condominium by refinancing the loan in her name before August 19, 2018, or place the condominium on the market on or before September 1, 2018. The court further ordered Wife to pay any mortgage payments, HOA fees, and taxes so long as she continued to live in the condominium. The court declined to grant either party any additional funds from the proceeds of the condominium for improvements to it.

---

[1]       The Arizona Constitution prohibits "[p]olygamous or plural marriages, or polygamous cohabitation," Ariz. Const. art. 20, par. 2. Under A.R.S. § 25-301, a court may dissolve a marriage and issue an annulment decree when the marriage is "void." The legislature has defined what constitutes a "void and prohibited" marriage. A.R.S. § 25-101. Different types of marriages are prohibited in Arizona, *see, e.g.*, A.R.S. § 25-102(B) ("Persons who are under sixteen years of age shall not marry."), but only a few are codified under A.R.S. § 25-101 as "void." The legislature has not defined a polygamous marriage as one that is void, but the conduct is punishable under A.R.S. § 13-3606. The parties have not raised the issue of whether the court correctly issued an annulment decree rather than a dissolution decree. Therefore, we will assume without deciding that an annulment decree was the proper vehicle to dissolve the parties' marriage.

¶9        Husband moved the court to clarify its ruling concerning the condominium sale proceeds and the Loan. The court did not explain its decision until after the 90-day deadline passed for Wife to refinance the Loan. The court clarified that the condominium "sale proceeds shall first be applied to the [Loan]" and "any remaining proceeds shall be equally divided." The court again ordered Wife to "refinance the mortgage in her name alone" if she wanted to retain possession of the condominium. The balance of the Loan was $75,350.94, which exceeded the amount necessary to buy out Husband's interest in the condominium.

¶10       Wife—unclear of the amount she was to refinance and the deadline to do so because of the court's amended ruling—had not refinanced the home by the time set by the court, so eventually, Husband moved to sell it. Ultimately, the court ordered the condominium to be sold and ruled that from Wife's share of the proceeds, she must pay Husband $3980 in attorney's fees and costs and reimburse him for the taxes, mortgage, and HOA fees he had paid since service of the petition. The condominium sold in February 2019, yielding net proceeds of $33,793.81, all of which went to Husband after Wife made the required reimbursements to him out of her share. The sale proceeds were distributed according to the court's order.

¶11       Wife filed a timely notice of appeal from the decree of annulment, and we have jurisdiction under A.R.S. § 12-2101(A)(2), Rule 78(c) (2019), and Arizona Rule of Civil Appellate Procedure 9(c).

**DISCUSSION**

¶12       The parties disagree whether the superior court had the power to order them to pay off the Loan from the proceeds of the condominium sale before splitting the remaining proceeds. Wife reiterates the superior court's conclusion that the annulment voided the community and argues that Husband gifted her the interest in the condominium. She contends, however, that in an annulment proceeding, the court is only permitted to distribute property and may not divide debt.

¶13       The superior court's characterization of property is a question of law that we review *de novo*. *In re Marriage of Pownall*, 197 Ariz. 577, 581, ¶ 15 (App. 2000). We review the superior court's division of assets and liabilities for an abuse of discretion. *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 14 (App. 2010). "A trial court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *State v. Jackson*, 208 Ariz. 56, 59, ¶ 12 (App. 2004).

5

¶14        Property acquired by either spouse during a marriage is community property. We hold that an annulment does not change the status of the community property, and, in such a case, the court must allocate the community property and debt just as it would in a dissolution proceeding. Because the superior court here based its decision on incorrect legal principles, we vacate the decree dividing the couple's assets and liabilities and its orders for Wife to reimburse Husband for his separate expenses, attorney's fees, and community expenses. We remand for the court to make a distribution considering the entirety of the community.

**A.    A Marriage that Results in an Annulment Still Creates a Community, and the Superior Court Must Equitably Divide the Community Assets and Debts When Dissolving the Marriage.**

**1.    An Annulled Marriage Nonetheless Creates a Community.**

¶15        "Superior courts may dissolve a marriage, and may adjudge a marriage to be null and void when the cause alleged constitutes an impediment rendering the marriage void." A.R.S. § 25-301. "If grounds for annulment exist, the court to the extent that it has jurisdiction to do so, shall divide the property of the parties . . . ." A.R.S. § 25-302(B). The issue we have to resolve is whether an annulment alters the community status of the property or debt created while the parties were married. We hold that it does not.

¶16        Distributing property and debt after marriage is a "statutory action, and the [superior] court has only such jurisdiction as is granted by statute." *Weaver v. Weaver*, 131 Ariz. 586, 587 (1982). The community property statute, A.R.S. § 25-211, does not distinguish between community property acquired during a marriage that is subsequently dissolved and community property acquired during a marriage that is subsequently annulled. The statute states:

> A.    All property acquired by either husband or wife during the marriage is the community property of the husband and wife except for property that is:
>
> > 1.    Acquired by gift, devise or descent.
> >
> > 2.    Acquired after service of a petition for dissolution of marriage, legal separation or *annulment* if the petition results in a decree of dissolution of marriage, legal separation or *annulment*.

B.      Notwithstanding subsection A, paragraph 2, service of a petition for dissolution of marriage, legal separation or *annulment* does not:

1.      Alter the status of preexisting community property.

2.      Change the status of community property used to acquire new property or the status of that new property as community property.

3.      Alter the duties and rights of either spouse with respect to the management of community property except as prescribed pursuant to [A.R.S. § 25-315(A)(1)(a)].

(Emphases added.)

¶17      As applied here, under A.R.S. § 25-211(A)(2), all property acquired "during the marriage is . . . community property . . . except for property that is . . . [a]cquired after service of a petition for dissolution . . . or annulment" that results in a dissolution or annulment. The statute thus presupposes that an annulment does not invalidate the community status of property acquired during the marriage, any more than a dissolution might invalidate the community status of property acquired during a marriage. Indeed, the relevant judicial proceeding—dissolution or annulment—is irrelevant for purposes of the statute. Subpart (B) of the statute makes the same point when it states that "service of a petition for . . . annulment does not . . . [a]lter the status of preexisting community property."

¶18      The corresponding statute concerning separate property supports the same conclusion. Under A.R.S. § 25-213(B), property acquired by a spouse "after service of a petition for dissolution . . . or annulment is . . . the separate property of that spouse" if the petition results in a dissolution or annulment. If, as the superior court concluded here, community property principles do not apply to property acquired during a marriage that is annulled, the distinction the statute draws between property obtained before and after service of an annulment petition would be immaterial.

¶19      As for debt incurred during a marriage, A.R.S. § 25-214(C)(3) likewise allows either spouse to unilaterally bind the community to debt except, as relevant here, "after service of a petition for dissolution . . . or

annulment" that results in a dissolution or annulment. As in A.R.S. § 25-211, the legislature has mandated that the service of a petition for annulment has the same consequence as the service of a petition for dissolution. Just as A.R.S. § 25-211 presupposes that property acquired during a marriage that is annulled remains community property, A.R.S. § 25-213(C) presupposes that debt acquired by one spouse during a marriage binds both spouses even after the marriage is annulled. It would be unnecessary to discontinue the accrual of community property and community debt after service of the petition if the annulment itself resulted in the nullification of the community. *See City of Mesa v. Killingsworth*, 96 Ariz. 290, 294–95 (1964) ("The presumption is that the legislature did not intend to do a futile thing by including [language that] is not operative.").

¶20         We acknowledge that our supreme court once held that "where there was no valid marriage of appellant to appellee, there can be no acquisition of property rights based on their marital status." *Cross v. Cross*, 94 Ariz. 28, 31 (1963). The statutes cited above, however, were enacted or amended after the *Cross* decision, and render it inapplicable here. To the extent *Cross* conflicts with the current marital property statutes, A.R.S. §§ 25-211 to -215, it has been superseded.

### 2.    In an Annulment Action, the Superior Court is to Allocate the Community's Assets and Debts under A.R.S. § 25-318.

¶21         Citing A.R.S. § 25-302(B), Wife argues that the only authority for the superior court to divide jointly held property in a family proceeding is A.R.S. § 25-318(A), which requires an equitable distribution. She asserts that the court erred by considering Husband's Loan under A.R.S. § 25-318(B) because there is no authority in Title 25 for the allocation of marital or separate debts in an annulment proceeding.

¶22         We disagree. As discussed above, the court has the authority to divide property in an annulment proceeding. The court has that power under A.R.S. § 25-302(B), applying the principles in A.R.S. §§ 25-211 through -215, and the division of community property includes the allocation of community debts. *Cadwell v. Cadwell*, 126 Ariz. 460, 462 (App. 1980) (although the dissolution statutes do not expressly grant authority to allocate debts between the parties, "[a]ssets and obligations are reciprocally related and there can be no complete and equitable disposition of property without a corresponding consideration and disposition of obligations").

¶23         "If grounds for annulment exist, the court to the extent that it has jurisdiction to do so, shall divide the property of the parties . . . ."

A.R.S. § 25-302(B). This provision grants the court authority to divide the community unless the court otherwise lacks jurisdiction to do so. Therefore, in an annulment action, the court has the same authority to allocate debts as in a dissolution or separation action. *See* A.R.S § 25-318(B)–(G).

## B. The Court Must Divide the Couple's Property Following Community Property Principles.

¶24 Husband urges this court to affirm the superior court's property division arguing that the court adequately considered the Loan according to A.R.S. § 25-318(B). However, when dividing the community, the court is to consider all community assets and debts in making an equitable property distribution. A.R.S. § 25-318(A).

¶25 Before the annulment trial, the court accepted the parties' agreement for Husband's house to remain his separate property and for each spouse to "keep their retirement accounts and bank accounts in their own names" and "the debts in their own names" as a binding agreement, pursuant to Rule 69, and found that the agreement was entered into "knowingly, intelligently and voluntarily," and was "fair and equitable." The court's acceptance of the parties' agreement, however, was predicated on the incorrect legal principle that the annulment voided the creation of the community. Therefore, the court could not correctly find that the parties acted with full knowledge of their property rights when they entered the agreement; nor could it determine whether the agreement was "fair and equitable." *See Buckholtz v. Buckholtz*, 246 Ariz. 126, 132–33, ¶ 24 (App. 2019) (the court must determine whether a party acted with full knowledge of his separate property rights when he entered into an "unfair" agreement). When the court accepts a Rule 69 agreement based on an erroneous view of the law governing the marital estate, the agreement cannot be enforced absent novation. Accordingly, we vacate that portion of the decree concerning the disposition of property and debt.

¶26 Wife also requests that we vacate "all orders entered in connection with proceedings by Appellee for the enforcement of the Decree of Annulment after Appellant's Notice of Appeal." Pursuant to the court's order, the condominium has been sold. We cannot unwind the sale, but we vacate the disposition of the parties' property and debt, including reimbursement, contribution, outstanding fees related to the condominium, and the awarded attorney's fees. On remand, the court may consider the amounts that Husband or Wife paid to maintain community assets as it would in any other proceeding dividing community property. *See Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017) (post-petition maintenance of

community assets from separate funds to be accounted for in "equitable property distribution").

## C.      Husband's Loan is Not a Separate Debt and Must be Considered in the Community Property Distribution.

¶27      Concluding that the couple established a community does not resolve the parties' dispute regarding the allocation of the Loan. The court did not expressly characterize the nature of the Loan, but effectively found Wife responsible for half of the obligation by ordering that the parties first apply the condominium sale proceeds to pay off the Loan.

¶28      Husband maintains that because he obtained the Loan during the marriage for the benefit of the community, it is a community debt. *See* A.R.S. § 25-214(C). Wife argues that because A.R.S. § 25-214(C)(1) requires joinder of both spouses to bind the community in any transaction for the acquisition, disposition, or encumbrance of an interest in real property, the Loan should be viewed as Husband's separate debt. Wife maintains that because Husband obtained the Loan as the sole signatory and using his separate real property as security, the Loan is Husband's separate debt under the statute. We disagree with Wife.

¶29      Generally, all liability incurred by either spouse during a marriage is presumed to be a community obligation. *Flower*, 223 Ariz. at 535, ¶ 12. This presumption applies to debt secured by separate property, *Johnson v. Johnson*, 131 Ariz. 38, 45 (1981) ("[W]e [do not] see any reason why the [community obligation] presumption should be negated by the fact that the husband used his separate property to secure the community loans."), unless there is a statutory exception, *Vance-Koepnick v. Koepnick,* 197 Ariz. 162, 163, ¶ 6 (App. 1999) (guaranty exception applicable). Section 25-214(C)(1) provides that "[e]ither spouse separately may acquire, manage, control or dispose of *community property* or bind the community, except that joinder of both spouses is required" for "any transaction for the acquisition, disposition or encumbrance of an interest in real property." (Emphasis added.) The Loan was not a purchase money loan on the condominium, nor did it encumber a community asset; therefore, the statutory exception under A.R.S. § 25-214(C)(1) does not apply. On remand, the court shall consider the loan as a community debt to be considered when equitably dividing the community.

## CONCLUSION

¶30      We vacate the property and debt orders in the annulment decree and remand for further proceedings consistent with this opinion.

Wife did not request attorney's fees, but as the successful party, she is entitled to costs upon compliance with ARCAP 21.

