NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

TERRY STEVENS, *Petitioner/Appellant*,

*v.*

IRENA STEVENS, *Respondent/Appellee*.

No. 1 CA-CV 18-0434 FC
FILED 2-20-2020

Appeal from the Superior Court in Maricopa County
No. FC2017-093662
The Honorable Theodore Campagnolo, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

COUNSEL

Liszewski Law Group, Mesa
By Matthew D. Liszewski
*Counsel for Petitioner/Appellant*

Stevens & Van Cott, PLLC, Scottsdale
By Laurence B. Stevens and Charles Van Cott
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　Terry Stevens ("Husband") appeals the superior court's decree of dissolution, which: (1) classified a home equity line of credit ("HELOC") debt exercised during marriage as Husband's debt with no offset or reimbursement by the community; (2) calculated his income based primarily on bank statements and business filings; (3) awarded spousal maintenance to Irena Stevens ("Wife"); and (4) awarded attorney's fees and costs to Wife.[1] We reverse the court's classification and division of the HELOC debt but otherwise affirm the decree.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Husband, an American, and Wife, a Ukrainian, married on July 11, 2013, in the Ukraine, where they remained for a few months. In August 2013, a month after their marriage, Husband withdrew $49,446 through a HELOC he had obtained in 2006 on a home he owned before the marriage. Husband did not have debt on the HELOC before the withdrawal. Husband and Wife used the HELOC funds to "live in Ukraine and start . . . [their] marriage." The couple moved to the United States later in 2013, where Wife could stay on a tourist visa if she returned to the Ukraine at least once every six months.

**¶3**　　　　During their four-year marriage, Husband worked for Five Points Excavating, L.L.C., ("Five Points") a swimming pool excavation company he founded in 1999. Wife was unable to work as a condition of the tourist visa but cared for their child, Nicole, who was born in 2015. Wife became pregnant with their second child, Oscar, in 2017. However, before Oscar's birth in 2017, the couple separated. Husband eventually filed for dissolution.

---

[1]　　　　We grant Wife's motion to voluntarily withdraw her cross appeal.

¶4 At the dissolution hearing, Husband testified that about six weeks before filing the petition for dissolution, he was no longer working because he had reinjured his back, aggravating a ten-year-old injury. He also stated he no longer owned Five Points because he transferred the business to his mother in 2013. Husband claimed that during the marriage, his income was only $17,149, $15,887, and approximately $18,000 in 2015, 2016, and 2017 respectively. He sold his house in October 2017 and used the funds to pay off the HELOC and other debts. He alleged that there was no money left from the sale after paying the debt.

¶5 Wife controverted Husband's claims and testified that Husband never missed a day of work due to back pain, he was still the owner of Five Points, and his income was significantly greater than what he claimed. Wife also testified that she was unable to work during the marriage due to the restrictions of the tourist visa and because she did not speak English. After the petition for dissolution was filed, Wife obtained an abused-spouse visa that allowed her to work. *See* 8 U.S.C. § 1154(a)(1)(A)(v)(I)(cc). She maintained, however, that she needed spousal maintenance to pay for English classes to help her work. Husband argued that he could not afford to pay spousal maintenance based on his income.

¶6 Husband's mother, the alleged owner of Five Points, also testified. Contrary to Husband's testimony, she claimed to have always been the owner of Five Points.

¶7 The superior court entered a decree of dissolution terminating the marriage. The court found that Wife was eligible for spousal maintenance because she lacked enough property to provide for her reasonable needs and was unable to be self-sufficient. The court awarded Wife $1500 per month for 18 months and found that Husband was reasonably capable of paying that amount. Further, the court found the HELOC debt to be Husband's separate debt obligation because he gifted the proceeds from the loan to the community. The court then divided the personal property equitably. Lastly, the court granted Wife's claim for attorney's fees and costs because of the "substantial disparity of financial resources between the parties" and denied Husband's request because he "acted unreasonably in the litigation." Husband timely appealed the decree and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(1), -120.21(A)(1), and Arizona Rule of Family Law Procedure 78(c).

## DISCUSSION

¶8        "We apply an abuse of discretion standard when reviewing the superior court's division of property, but review the court's characterization of property *de novo*." *Helland v. Helland*, 236 Ariz. 197, 199, ¶ 8 (App. 2014). We also review an award of attorney's fees and spousal maintenance for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014) (attorney's fees); *Leathers v. Leathers*, 216 Ariz. 374, 376, ¶ 9 (App. 2007) (spousal maintenance). "A court abuses its discretion if it commits an error of law in reaching a discretionary conclusion, it reaches a conclusion without considering the evidence, it commits some other substantial error of law, or the record fails to provide substantial evidence to support the trial court's finding." *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012) (quotations omitted). However, "we view the evidence in the light most favorable to affirming the [superior] court's ruling and will affirm if the evidence reasonably supports it." *Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019).

**A.    The HELOC Debt Secured by Husband's Separate Property Is a Community Debt Because it was Exercised During Marriage and Used for Community Purposes.**

¶9        The court found that Husband gifted Wife the funds from the HELOC to pay community expenses. It is unclear whether the court found that Husband intended to undertake the debt as his sole obligation at the time the debt was incurred, or that Husband's use of separate funds, i.e., the proceeds of the sale of his separate property to pay the community debt, was a gift. Regardless, the record lacks reasonable evidence to support either conclusion.

¶10       The HELOC was a community debt because it was incurred during the marriage for the benefit of the community. Generally, "all debt incurred by either spouse during marriage is presumed a community obligation." *In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 12 (App. 2010). This presumption applies to debt secured by separate property if that debt is incurred for the benefit of the community. *Johnson v. Johnson*, 131 Ariz. 38, 45 (1981) ("[W]e [do not] see any reason why the [community obligation] presumption should be negated by the fact that the husband used his separate property to secure the community loans."); *Hammett v. Hammett*, 247 Ariz. 556, 562, ¶ 29 (App. 2019).

¶11       The superior court erred by classifying the debt as Husband's separate obligation. *Hammett*, 247 Ariz. at 559, ¶ 13 (error to misapply the

law or predicate a decision on incorrect legal principles). Husband obtained the HELOC before the marriage but did not draw on the credit line until during the marriage. The superior court found—and the parties admit— that the HELOC funds were used for community expenses, including their wedding, travelling, and living expenses. Wife argues that she believed the funds were from a bonus Husband received and "would not have agreed to spend so much [money] on the [wedding] celebration and other expenses had she known [Husband] funded them with debt." However, Wife's knowledge was not required to bind the community to the obligation. Either spouse can bind the community except for under certain circumstances not present here. A.R.S. § 25-214(C); *Hammett*, 247 Ariz. at 562, ¶ 29. Therefore, the HELOC debt was a community obligation.

**¶12** Classifying the obligation as community does not end the inquiry. After the petition for dissolution was served, Husband extinguished the debt with his separate funds when he sold his separate property. Because the proceeds from the sale were separate and used to pay a community obligation, Wife would ordinarily be obligated to reimburse Husband for her share of the community obligation. *Bobrow v. Bobrow*, 241 Ariz. 592, 596, ¶ 19 (App. 2017) ("A spouse who voluntarily services community debt and maintains community assets with separate property should not be penalized . . . [when] such payments are made, they must be accounted for in an equitable property distribution.").

**¶13** Wife maintains that the extinguishment of the HELOC debt was a gift. Wife presented no evidence that supports a gift claim. Husband's payment of the debt after the sale of his separate property does not constitute evidence of a gift because the sale occurred after he petitioned for the dissolution of the marriage. *Bobrow*, 241 Ariz. at 596, ¶ 15. Further, to sell the house, Husband was required to pay off the HELOC debt. 12 C.F.R. § 1026.40(e); Consumer Financial Protection Bureau, What You Should Know About Home Equity Lines of Credit (January 2014) at 9, https://files.consumerfinance.gov/f/201401_cfpb_booklet_heloc.pdf
(sellers are required to pay off the HELOC debt in full immediately upon the sale of a home). No evidence in the record supports an intent to gift Wife the post-petition payment of the debt.

**¶14** There is no evidence of an agreement to gift Wife the funds after the post-petition sale of the house, nor any agreement during the marriage that the debt would be Husband's responsibility. Although Wife asserted that she was unaware of the debt until after the sale of the home, her lack of knowledge of the debt does not establish that Husband intended

to gift Wife the funds required to pay off the HELOC. Thus, the court abused its discretion by not equitably accounting for the HELOC debt.

¶15            We reverse the superior court's order denying Husband reimbursement and remand for further proceedings.

**B.      The Superior Court Did Not Abuse its Discretion by Attributing More Income to Husband Than What He Claimed.**

¶16            Husband claims that he cannot afford to pay spousal maintenance. The superior court found that "Husband's tax returns are not accurate portrayals of his actual income, and that Husband has taken specific actions to disguise his actual income in an attempt to avoid paying spousal maintenance." Further, the court determined that over 50 percent of charges made on the Five Points business account were personal. As a result, the court found Five Points' bank statements were more reliable indicators of Husband's income, and calculated Husband's income by halving the amount of money deposited into the company bank account during the marriage and then dividing that amount by the number of years Husband and Wife were married to get an average computation of his income per year, which equaled $95,856. Husband claims the superior court's calculation was erroneous and that the court abused its discretion by not considering Husband's accountant-prepared income tax statement and the evidence that multiple family members had simultaneous access to the account. We find no error.

¶17            There is reasonable evidence to support the superior court's finding that Husband was not credible and that his income was much more significant than he claimed. First, Husband's testimony at trial that his mother was the owner of Five Points was undermined by other evidence. Husband testified that his mother had taken over the company in 2013, but there was no evidence of the change in ownership until a month after the petition for dissolution was filed. Five Points' 2011–2015 annual reports also identify Husband as the only person "holding more than 20% of any class of shares issued by the corporation, or having more than 20% beneficial interest in the corporation." Husband's assertion was further undermined by his mother, who claimed she owned Five Points since the business began, almost 14 years earlier than Husband claimed. Husband never transferred his stock in Five Points to his mother and Five Points' corporate income tax returns in 2015 and 2016 show Husband as the 100 percent owner of the company.

¶18 Second, as the owner of Five Points, Husband earned significant income. At trial, Husband claimed to have never made $20,000 annually during the marriage. But on his income tax returns, Husband reported "nonpassive income" from Five Points of $74,749 in 2015 and $29,687 in 2016. He also signed a credit application in 2015 reporting an annual income of $72,000. Meanwhile, Five Points reported $248,809 and $185,380 in gross sales in 2015 and 2016, respectively. Five Points also had bank deposits totaling approximately $158,000 in 2014, $286,000 in 2015, $185,000 in 2016, and $129,000 in 2017, belying Husband's claim that his income was less than $20,000 per year.

¶19 Husband also tried to establish a lower income amount by explaining that other users on the account made personal purchases and by stating that he was no longer able to work due to an injury. Father's testimony on these points was not credible. Husband and Wife dined out almost every day, sometimes three times per day, and traveled frequently. Husband offered no testimony concerning which family members were making purchases from the Five Points account and what those purchases were.

¶20 Lastly, Husband's testimony about his injury was inconsistent with evidence that he only saw a doctor once between May 2017 and January 2018 for Valley Fever, and he was not on medications. Likewise, Husband also frequently worked as an estimator for Five Points, which did not require physical labor.

¶21 The evidence supports the court's determination that Husband earned a significant income, owned Five Points, was not injured, and exaggerated his business' deductions. The court reasonably formulated Husband's income based on the mix of personal and business expenditures from the business account, including purchases in the Ukraine and abroad, frequent restaurant bills, video streaming services, movie rentals, and grocery store purchases. *See also In re Estate of Newman*, 219 Ariz. 260, 271 ¶ 40 (App. 2008) ("[I]t is not the function of this court to reweigh the facts or to second-guess the credibility determinations of the judge who had the opportunity to evaluate the witnesses' demeanor and make informed credibility determinations."). Thus, the court did not abuse its discretion by imputing half of Five Points' bank deposits as income and averaging the amount from 2014 to 2017 to calculate a reasonable salary for Husband.

**C.    The Superior Court Did Not Abuse its Discretion by Awarding Wife Spousal Maintenance.**

¶22        The superior court awarded Wife $1500 a month for 18 months in spousal maintenance. Husband claims Wife should not be entitled to an amount of support beyond what she needs to meet her reasonable needs, and because she incurred no debt after separating from Husband and made no attempt to work, the court's award is unreasonable.

¶23        A.R.S. § 25-319(A) provides that the superior court may award spousal maintenance if it finds that a spouse:

> 1. Lacks sufficient property, including property apportioned to the spouse, to provide for that spouse's reasonable needs.

> 2. Is unable to be self-sufficient through appropriate employment or is the custodian of a child whose age or condition is such that the custodian should not be required to seek employment outside the home or lacks earning ability in the labor market adequate to be self-sufficient.

If the court finds that a spouse is eligible for an award under A.R.S. § 25-319(A), then it must consider the factors outlined in § 25-319(B) to determine the "amount" and "period of time" needed for a just award.

¶24        The superior court found Wife met the eligibility provisions of A.R.S. § 25-319(A)(1)–(2) and considered all 13 factors in § 25-319(B). Wife requested $4200 per month for three years in spousal maintenance because of her lack of property and inability to be self-sufficient. However, the court found that Wife was able to speak English more proficiently than she testified and "is capable of working at least a minimum wage job." Nonetheless, the court concluded Wife "cannot at this time meet her own needs independently" and stated she could benefit from "educational activities to improve her English and allow her to find employment." Thus, the court reduced the spousal maintenance amount Wife sought to $1500 a month for 18 months. We find no abuse of discretion.

¶25        As discussed above, the superior court concluded Husband earned a yearly salary of approximately $95,000 and made "attempts to minimize his income to avoid paying spousal maintenance." The record confirms the superior court's finding that Wife speaks English more proficiently than she claimed and could probably find minimum-wage employment, and the superior court accounted for these findings in its ruling by reducing her award in both duration and amount. The record also

indicates Wife did not work or receive any education during their marriage, that her English competency is still minimal, and that she lacks resources to help her meet her own needs independently, including paying for healthcare and rent. Accordingly, we find there is sufficient evidence in the record to support the court's finding that Wife is eligible for spousal maintenance under A.R.S. § 25-319(A) and that the award was reasonable. *See Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984) ("An award of spousal maintenance will not be disturbed if there is any reasonable evidence to support the judgment of the [superior] court.").

## D. Wife Was Entitled to Reasonable Attorney's Fees and Costs.

¶26 The superior court found that a substantial disparity of financial resources existed between the parties, and Husband acted unreasonably during the litigation. Consequently, the court granted Wife's attorney's fees and costs. Husband claims the court abused its discretion by basing its decision on his improperly calculated income. We find no error.

¶27 The superior court may grant an award of attorney's fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). As discussed above, there is a substantial financial disparity between Husband and Wife when considering his income during the marriage versus her ability to achieve self-sustaining independence. *Al-Thanayyan*, 246 Ariz. at 286, ¶ 30 ("[A]ll a party need show is that a relative financial disparity in income and/or assets exists between the parties."(quoting *Magee v. Magee*, 206 Ariz. 589, 589, ¶ 1 (App. 2004))). Thus, the court did not abuse its discretion by concluding, "Husband has considerably more resources to contribute toward Wife's attorney fees and costs." The superior court's award is further supported by Husband's unreasonable attempts to minimize his income and deny ownership of Five Points.

## ATTORNEY'S FEES AND COSTS

¶28 Both parties request an award of attorney's fees under A.R.S. § 25-324. After considering the financial resources of both parties, we award Wife her reasonable attorney's fees and costs incurred on appeal contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

**¶29** We reverse the superior court's classification of the HELOC debt, remand for further proceedings consistent with this decision, and otherwise affirm the decree.



AMY M. WOOD • Clerk of the Court
FILED: AA