NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In Re the Matter of:

OVIE EMEOFA, *Petitioner/Appellant*,

*v.*

TEKPEVWE EMEOFA, *Respondent/Appellee*.

No. 1 CA-CV 24-0805 FC
FILED 11-10-2025

Appeal from the Superior Court in Maricopa County
No. FC2020-096767
The Honorable Charlene D. Jackson, Judge

**VACATED AND REMANDED IN PART;
AFFIRMED AS MODIFIED IN PART**

COUNSEL

Law Offices of Kamille Dean, P.C., Phoenix
By Kamille R. Dean
*Counsel for Petitioner/Appellant*

Cosmas Onyia, PC, Phoenix
By Cosmas Onyia
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Daniel J. Kiley joined.

_____

**F U R U Y A**, Judge:

¶1        Ovie Emeofa ("Husband") appeals several rulings in the decree dissolving his marriage to Tekpevwe Emeofa ("Wife"). For the reasons stated below we vacate and remand in part to the superior court to reconsider the disposition of certain community debts and reimbursement requests. We affirm the past child support order as modified to reflect the correct time period. In all other respects, we affirm the decree.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The parties married in 2002 and, at the time of dissolution in 2024, had one minor child. As relevant to this appeal, their marital community owned the marital residence, several businesses, a commercial property, and a vacant lot. According to Husband, only one of the businesses, Serenity Tender Care Services ("Serenity"), was operational. Husband runs Serenity from the community's commercial property with his adult children and other employees. Wife currently works as a realtor.

¶3        The superior court issued temporary orders giving Husband exclusive use of the marital home and awarding Wife child support of $100 a month and spousal maintenance of $800 a month. The court granted Wife's pre-trial request to appoint a federally authorized tax practitioner ("tax practitioner") to review the accuracy of Husband's self-employment records under Arizona Revised Statutes ("A.R.S.") Section 25-320.02(A).

¶4        After much delay, the superior court held a three-hour trial in June 2024. The parties and the tax practitioner testified. The court entered the decree and later awarded $5,000 in attorneys' fees to Wife. Husband timely appealed, and we have jurisdiction pursuant to A.R.S. Section 12-2101(A)(1).

¶5        While this appeal was pending, several things occurred. First, the parties agreed that the decree unintentionally omitted the community's commercial property. As a result, the parties agreed that Husband would keep the commercial property, refinance it, and pay Wife her half of the

equity. Husband paid Wife $142,926 for her interest in the commercial property.

¶6            Second, Wife moved to clarify the reimbursement orders and debt allocation in the decree. Third, Husband moved to enforce the order that Wife pay her share of the community debts. Fourth, Wife counter-petitioned to enforce the order awarding her the marital residence[1] and several items of personal property. Fifth, the superior court signed off on the parties' subsequent agreement that Husband would continue paying the mortgage, refinance the marital residence, and pay Wife one-half of the equity. According to this agreement, if Husband could not refinance the marital residence, they would sell it and equally divide the equity. Later, the parties jointly asked the court to reappoint the real estate commissioner, suggesting that they intended to sell the home.

¶7            The superior court first ruled that it lacked jurisdiction to consider Wife's motion to clarify absent an order staying the appeal and revesting the court with jurisdiction but later scheduled a hearing on the competing petitions to enforce. After the hearing, the court clarified its ruling on the debts and reimbursement issue, explaining that Wife was responsible for the assigned debts listed in the decree but did not have to pay them by a certain date because she was presently unable to do so. The court ordered the marital residence sold because Wife failed to refinance it as ordered in the decree. The court noted Wife could pay her share of the debts from the proceeds of that sale.

## DISCUSSION

### I.    Property Allocation

¶8            "The superior court has broad discretion in apportioning community property and debts to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion." *Andrews v.*

---

[1]    While the competing petitions to enforce were pending, Wife also filed an emergency petition to appoint a special commissioner to sell the marital residence because she could not refinance it. In response, Husband asked to refinance the property and divide the equity after being reimbursed for the refinance costs and mortgage payments he already made. The court granted Wife's motion and appointed a real estate special commissioner on May 20, 2025. On May 28, 2025, the court signed the parties' Rule 69 Agreement that dispensed with the need for the real estate commissioner. The court then vacated the order of appointment.

*Andrews*, 252 Ariz. 415, 419 ¶ 18 (App. 2021); *see also* A.R.S. § 25-318(A). In most cases, a substantially equal division is equitable unless there is "a sound reason to divide the property otherwise." *In re Marriage of Inboden*, 223 Ariz. 542, 544 ¶ 6 (App. 2010); *see also Toth v. Toth*, 190 Ariz. 218, 221 (1997). When making an equitable division, the court "should consider all factors that bear on the equities of the division[.]" *Inboden*, 223 Ariz. at 547 ¶ 18.

### A.      Agreement to Resolve the Real Estate Errors

**¶9**          The decree found that the community owned three real properties: (1) a "marital residence" on 179th Drive, (2) another "marital residence" on 173rd Avenue, and (3) a vacant lot. The parties agree that the 173rd Avenue property was Wife's leased apartment, which the court incorrectly found to be community property and awarded to Husband. The decree did not address the community's commercial property where Serenity was located. The parties later reached a post-decree agreement to address these errors. As a result, Husband kept the commercial property and paid Wife $142,000 for her share of the equity in that property.

**¶10**          On appeal, Husband argues the erroneous finding that Wife's apartment was a community asset affected the overall property allocation because the court must have attributed some value to the apartment. We reject this argument for two reasons.

**¶11**          First, Husband waived this argument by failing to address it in his opening brief, *see In re Marriage of Johnson and Gravino*, 231 Ariz. 228, 235 ¶ 26 (App. 2012), or cite evidence to support it, *see J.W. v. Dep't of Child Safety*, 252 Ariz. 184, 188 ¶ 11 (App. 2021) ("Arguments that are unsupported by legal authority and adequate citation to the record are waived."); *see also* ARCAP 13(a)(7) (arguments in briefs must be supported "with citations of legal authorities and appropriate references to the portions of the record").

**¶12**          Second, and perhaps more significantly, the parties settled the issue of the omitted property in a post-decree agreement. Wife signed a warranty deed transferring her interest in the commercial property to Husband, and in turn, Husband paid Wife $142,000 for her interest in the property. This is the relief Husband requested at trial, and the parties' post-decree resolution renders any argument about the omitted property issue moot.

### B.        Marital Residence

**¶13**        The decree awarded the marital residence to Wife on the condition that she refinance the mortgage. If Wife could not refinance by a certain date, the court ordered the home sold and the equity divided equally. Husband argues this allocation was inadvertently made because he was living in the marital residence at the time with several relatives, and Wife lived with only their minor child. Both parties asked to be awarded the marital home. Notwithstanding their respective living arrangements, Husband does not show how the overall allocation, including equalization payments, was inequitable. *See J.W.*, 252 Ariz. at 188, ¶ 11; ARCAP 13(a)(7). Therefore, we find no abuse of discretion.

**¶14**        Husband also argues that the court should have allowed him to refinance the mortgage on the marital home if Wife could not. But Husband waived this argument because he did not request this option at trial. *Bobrow v. Bobrow*, 241 Ariz. 592, 597 ¶ 23 (App. 2017). Instead, he asked the court to award him the marital home outright, rather than secondarily award him the property if Wife was unable to refinance it. Thus, Husband's argument is waived.

### C.        Community Debts and Husband's Reimbursement Claims

**¶15**        Husband argues that the court did not equitably allocate the community debts. At trial, Husband offered a list of community debts and community expenses he paid during the litigation and wanted reimbursed. On appeal, he challenges the following specific debts: (1) $42,880 owed to Degnan Law Group ("DLG"), (2) $3,032 for a Berkshire timeshare, and (3) four personal loans. In relation to these debts, Husband also sought at trial reimbursement for, among other things, $10,495 he paid to DLG for attorneys' fees, Hilton timeshare payments, and mortgage payments on the marital residence and the commercial property.

#### 1.        Degnan Law Group

**¶16**        The court allocated to Husband the entire $42,880 DLG attorneys' fees debt, which resulted from a lawsuit Husband filed relating to the community's commercial property. The DLG invoice showing an outstanding balance of $42,880 was dated September 2020, which is also when the Petition for Dissolution of Marriage was filed. Thus, the debt is presumptively a community obligation, *see Hammett v. Hammett*, 247 Ariz. 556, 562 ¶ 29 (App. 2019) ("Generally, all liability incurred by either spouse during a marriage is presumed to be a community obligation."), which "may be overcome by clear and convincing evidence that the debt is

intended as the separate debt of one of the spouses rather than both[,]" *Schlaefer v. Fin. Mgmt. Serv., Inc.*, 196 Ariz. 336, 339 ¶ 10 (App. 2000).

¶17 By allocating the entire DLG debt to Husband, the court treated the debt as separate debt without identifying any evidence to rebut the presumption of a community obligation. Further, even though the court treated the debt as separate *debt*, it subsequently contradicted this treatment by ordering that Wife *reimburse* Husband for the $10,495 he allegedly paid to DLG. Because we can discern no reason for this inconsistency, we vacate and remand for the superior court to reconsider or explain its reasoning. *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) (holding that when the trial court identifies "[n]o grounds for its action . . . and none clearly appear[] from the record, we are not disposed to assume that the trial court exercised its discretion and denied relief for some proper and permissible reason.").

### 2. Timeshares

¶18 There was scant evidence about the Hilton and Berkshire timeshare debts or Husband's request for reimbursement for the Hilton timeshare. The statements show that the parties incurred both timeshare debts during the marriage. Wife did not dispute that both timeshares are community debts, *see Hammett*, 247 Ariz. at 562 ¶ 29, but Wife claimed that only Husband used the "timeshares."

¶19 On appeal, Husband specifically argues that it was inequitable to award the entire Berkshire timeshare debt to him. But he argues more generally that the court did not equitably allocate the "community debts." As to the Berkshire timeshare, Husband offered a statement showing annual charges and late fees from 2017 to 2024 totaling $3,032. The court ordered Husband to pay this entire debt. As to the Hilton timeshare, Husband listed a debt of $14,896 and a reimbursement claim for $22,601. He did not explain the difference in these amounts. The court ordered Wife to pay half of the $22,601 Hilton reimbursement claim and allocated the entire $14,896 Hilton debt to Husband.

¶20 Even if we assume without deciding that the court properly credited Wife's testimony and ordered Husband to pay the entire Berkshire timeshare based on his exclusive use, the court's treatment of the timeshare *debts* and the *reimbursement claims* is again inconsistent. Given the sparse evidence about the timeshares, we cannot determine a reasonable and equitable basis for these inconsistent orders. Therefore, we vacate the timeshare orders and remand for reconsideration. *Geyler*, 144 Ariz. at 330.

¶21          Given our resolution of these debts and reimbursement orders, the superior court may exercise its discretion on remand to reconsider the overall debt allocation and reimbursement claims as necessary to achieve an equitable result.

### 3.          Personal Loans

¶22          Husband claimed that he took out three unsecured personal loans from friends and family during the marriage and one after the divorce petition was served to pay community debts. Over Wife's objections, the superior court admitted the promissory notes that Husband offered as evidence of these debts. Ultimately, the court rejected Husband's claim that these were community obligations. The court found the evidence of the loans was not credible, noting in part that Husband's prepared loan documents "were prepared after the fact, were not signed by the parties and did not include or contain loan or repayment terms."

¶23          Husband argues the court erred in discrediting the promissory notes because they lacked the lender's signature. We need not address this point because the record supports the court's additional finding that the promissory notes were prepared after the dissolution litigation started and well after the alleged loans were purportedly made. *See Forszt v. Rodriguez*, 212 Ariz. 263, 265 ¶ 9 (App. 2006) ("We may affirm the trial court's ruling if it is correct for any reason apparent in the record."). Thus, the court was within its discretion to reject the promissory notes and Husband's testimony as evidence of the loans. "On appeal, we do not reweigh the evidence but defer to the family court's determinations of witness credibility and the weight given to conflicting evidence." *Lehn v. Al-Thanayyan,* 246 Ariz. 277, 284 ¶ 20 (App. 2019). Thus, we affirm the allocation of the personal loan debts to Husband.

### 4.          Personal Property

¶24          A temporary order granted Husband exclusive use of the marital home but allowed Wife to return and retrieve her personal property. Husband claimed that Wife took all her things from the home soon after, but Wife testified that Husband moved several of her designer handbags and accessories so she could not retrieve them that day. The decree ordered Husband to turn over these items to Wife. Husband claims he no longer had those items and the court erred in ordering their return to Wife.

¶25         The superior court credited Wife's testimony over Husband's about the location of Wife's personal property. We defer to this credibility determination and find no error. *Id.*

### 5.         Reimbursement for Mortgage Payments

¶26         The superior court rejected some of Husband's reimbursement requests, finding the business paid over $60,000 of these expenses, "including but not limited to mortgage payments, utilities, upkeep and repairs." The tax practitioner's report noted that Serenity made various payments for several non-business expenses, including many unidentified cash or check transactions. Husband did not challenge this point on cross-examination or provide evidence to the contrary.

¶27         The court ordered Wife to reimburse Husband for the marital residence mortgage payments. Conversely, the court declined to order reimbursement for the commercial property mortgage payments, finding the business made those payments, not Husband. Husband contends the superior court erred in finding that the business paid any mortgage payments. Yet he cites no evidence contradicting this finding. *See J.W.*, 252 Ariz. at 188 ¶ 11; ARCAP 13(a)(7). Therefore, we find no abuse of discretion.

## II.    Child Support

### A.    Current Child Support Obligation

¶28         We review child support awards for an abuse of discretion and accept the superior court's findings of fact absent clear error. *Engel v. Landman*, 221 Ariz. 504, 510 ¶ 21 (App. 2009).

¶29         The court calculated the current child support order based on Husband's monthly income of $21,916.67 ($263,000 annually). It found Wife's monthly income was $6,666.67 ($80,000 annually). Husband argues that the income attributed to him is inaccurate. This argument ignores the fact that he stipulated in his pretrial statement that he should be attributed an average income of $263,674 to determine his prospective child support obligation. Given this trial stipulation, Husband has waived this argument on appeal. *Wolf Corp. v. Louis*, 11 Ariz. App. 352, 355 (1970) ("[O]ne who has stipulated to certain facts is foreclosed from repudiating them on appeal.").

¶30         Husband also argues, without citing any factual or legal basis, that the income attributed to Wife is "completely inaccurate and underestimated." Because Husband failed to develop this argument, it is waived. *See J.W.*, 252 Ariz. at 188 ¶ 11.

**B.**     **Past Child Support Order**

¶31         Based on the evidence at trial, the court found that the temporary child support order significantly underestimated Husband's income. As a result, the court recalculated the temporary child support order using Husband's corrected income figure for the period from December 1, 2020 through June 30, 2024. But in determining the accurate past child support, the court miscalculated the number of months. The relevant period covers 43 months, not 55 as stated in the decree. Therefore, the arrearage amount is $50 a month for 43 months, totaling $2,150. Accordingly, we vacate the past child support judgment of $2,805 and modify it to $2,150. *See Cagle v. Carr*, 101 Ariz. 225, 228 (1966) (appellate court may modify a judgment entered for the wrong amount due to a mathematical error).

**III.     Spousal Maintenance**

¶32         The court found that Wife was eligible for spousal maintenance and awarded her $1,500 a month for 36 months. We review the award of spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348 ¶ 14 (App. 1998).

¶33         Husband initially challenges the amount and duration of spousal maintenance awarded, but fails to provide any factual or legal basis to support his challenge. Thus, this argument is waived. *See J.W.*, 252 Ariz. at 188 ¶ 11; ARCAP 13(a)(7).

¶34         Husband also challenges the court's eligibility finding. Spouses are eligible for spousal maintenance if they satisfy one of the statutory factors in A.R.S. Section 25-319(A). The superior court found that Wife lacked sufficient property to provide for her reasonable needs. *See* A.R.S. § 25-319(A)(1). Husband argues this was error because Wife received the marital home.

¶35         For purposes of determining a spouse's eligibility for spousal maintenance under Section 25-319(A)(1), "sufficient property means property that, standing alone, can provide for a spouse's reasonable needs during his or her lifetime." *In re Marriage of Cotter and Podhorez*, 245 Ariz. 82, 86 ¶ 10 (App. 2018). According to evidence propounded by Husband at trial, the parties would each receive $174,408 if the marital residence were sold and the equity divided equally. Other than the equity in the marital residence, Wife received $142,000 for her share of the commercial property, an unspecified amount for her share of a vacant lot, and around $2,800 in bank deposits. Wife is fifty years old. Based on the expenses shown in

Wife's financial affidavit, the court reasonably concluded that the property was not sufficient to last her lifetime. *See id.*

¶36 Husband also contends that the court failed to consider that Wife has an MBA and a certificate in data analysis in addition to her real estate license. But Husband did not provide evidence of the earning capacity of an individual with these credentials, so his argument that Wife "has the ability to make an income with her educational background" is speculative. Husband also notes—without citing record support—that by contrast, he does not have a data analysis certificate. But Husband's earning ability is not relevant in determining whether Wife is eligible for spousal maintenance. *See id.*, at 85 ¶ 7 (citing A.R.S. § 25-319(A)).

¶37 In a related point, Husband argues the court "inadvertently" found Wife's income was lower because of a depressed real estate market. But the record supports this finding. Wife testified that the market has been slow in recent years. Husband cites no evidence to controvert this claim, other than alleging it is "simply not true." Thus, we defer to the court's resolution of conflicting evidence and witness credibility. *Lehn*, 246 Ariz. at 284 ¶ 20.

¶38 Husband further objects to the appointment of a tax practitioner to examine his self-employment income but not Wife's. At trial, he did not object to the tax practitioner's evidence on this basis. Instead, Husband argued the request was untimely and unnecessary because his own certified public accountant could provide the relevant information. Because he did not ask the court to appoint a tax practitioner to examine Wife's self-employment income at trial, we find no abuse of discretion. *See Bobrow*, 241 Ariz. at 597 ¶ 23 (arguments not raised below are considered waived).

¶39 According to Husband, the tax practitioner's report contained many errors. He rejects the characterization of several expenses as personal instead of business-related. He challenges the characterization of payroll and wages and alleges that the report incorrectly attributed loans as income. Significantly though, Husband did not question the tax practitioner about these points on cross-examination or cite where in the 250-page report most of these alleged errors occurred. Thus, Husband waived these arguments by not making them at trial and by citing no evidence to support his claims. *See id.*; *J.W.*, 252 Ariz. at 188 ¶ 11. Thus, the court did not abuse its discretion by relying on the income information provided by the tax practitioner.

## IV.    Award of Attorneys' Fees to Wife

¶40         The court awarded $5,000 in attorneys' fees to Wife, finding a "substantial disparity of financial resources" and that Husband acted unreasonably in the litigation. We review the award of attorneys' fees under A.R.S. Section 25-324 for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494 ¶ 6 (App. 2014).

¶41         Husband erroneously contends the court awarded Wife's attorneys' fees "based solely on income." Not so. The court also cited Husband's unreasonable actions throughout the litigation as further grounds for the award. For example, Husband's evasiveness about his income caused the appointment of the tax practitioner, who concluded that Husband had vastly understated his income. The court also found the promissory notes Husband offered were questionable. *See supra* ¶ 23. Further, the court found Husband's request for reimbursement was unreasonable because the business paid some of the expenses and then claimed them as a tax deduction. The court also relied on A.R.S. Section 25-415 to support the award of fees based on Husband seeking reimbursement for expenses his business paid. We have addressed and rejected Husband's challenges to each of these findings above. *See supra* ¶¶ 23, 26–27. Thus, the fee award is supported by the court's finding of Husband's unreasonableness.

¶42         In any event, the court did not abuse its discretion in finding that Husband had greater financial resources than Wife. Husband agreed that his average income over the past four years was over $20,000 a month, with the highest earnings in the last two years. Thus, we affirm the $5,000 attorneys' fees award.

## ATTORNEYS' FEES AND COSTS ON APPEAL

¶43         Both parties seek an award of attorneys' fees on appeal under A.R.S. Section 25-324. In the exercise of our discretion, after considering the parties' financial resources and reasonableness, we find Husband has greater financial resources. He also unreasonably challenged his income for child support purposes after agreeing to the amount at trial and failed to provide legal authority or record citations for several issues he raised on appeal. Even so, not all of Husband's positions were unreasonable, so we will award Wife a portion of her reasonable attorneys' fees on appeal upon compliance with ARCAP 21.

¶44         But we are unable to determine costs on appeal at this time. When the appealing party is the one against whom judgment was entered

by the superior court, A.R.S. Section 12-342(A) indicates which party will receive costs on appeal:

> [I]f the judgment of the appellate court is against [appellant], but for a lesser amount, he shall recover costs in the appellate court, but shall be adjudged to pay costs in the court below. If the judgment of the appellate court is against him for the same or a greater amount than in the court below, the adverse party shall recover costs in both courts.

Because the superior court must reconsider the allocation of certain debts and reimbursement claims, we cannot conclude if the judgment against Husband will be less than, equal to, or greater than the superior court's judgment. Thus, after reconsidering the allocation of debts and reimbursements as outlined above, *see supra* ¶¶ 16–21, we order the superior court to determine costs on appeal.

## CONCLUSION

¶45　　　　The orders regarding the DLG and timeshare debts and reimbursement requests are inconsistent. Accordingly, we vacate those rulings and remand for reconsideration consistent with this decision. We affirm judgment for past child support as modified to $2,150. All other orders in the decree are affirmed. We award Wife a portion of her attorneys' fees on appeal upon compliance with ARCAP 21. We further order the court to determine costs on appeal after reconsidering the identified debts and reimbursement requests.

