225 P.3d 588

**In re the MARRIAGE OF Norman Lee FLOWER, Petitioner/Appellee,**

v.

**Judy Darlene Flower, Respondent/Appellant.**

**No. 1 CA–CV 08–0234.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 25, 2010.

The Law Firm of M. Paul Fischer By M. Paul Fischer and Thomas J. Griggs, Mesa, Attorneys for Petitioner/Appellee.

Slaton Law Office, PC By Sandra L. Slaton, Scottsdale, Attorneys for Respondent/Appellant.

## OPINION

BROWN, Judge.

¶ 1 The question we address here is whether the family court abused its discretion in ordering a substantially unequal distribution of marital assets and debts under the equitable principles explained in *Toth v. Toth*, 190 Ariz. 218, 946 P.2d 900 (1997). For the following reasons, we affirm.

## BACKGROUND

¶ 2 Judy D. Flower ("Wife") married Norman L. Flower ("Husband") on January 26, 2006. She was 55 years old and he was 76. Entering into the marriage, both Husband and Wife owned separate real property. Husband owned the "Sugar Creek" house, and Wife, together with her son, owned the "Queen Valley" house. Shortly after the wedding, Husband signed a deed to the Sugar Creek residence which transferred title to both parties as community property with right of survivorship. Ownership of the Queen Valley house was not changed.

¶ 3 Husband and Wife lived in the Sugar Creek house for approximately the first six months of the marriage. During that time, they made improvements to the Queen Valley house and then moved into it.[1] They also incurred over $61,000[2] of debt during the marriage. Although the exact amount of debt the community incurred to improve the Queen Valley residence is disputed, Wife concedes that at least $32,000 was spent for this purpose. A significant portion of the funds used to pay for the improvements came from a home equity loan on the Sugar Creek house. Most of the remainder came from credit cards and a line of credit used to purchase flooring and other materials for the Queen Valley house.

¶ 4 In January 2007, Husband filed a petition for annulment, alleging Wife never had a romantic interest in him and her decision to enter into the marriage was financially motivated. Wife denied the allegations and counter-petitioned for dissolution of the marriage. At trial, the parties presented evidence regarding the annulment and dissolution petitions. The primary disputes, however, involved the division of the Sugar Creek house and the allocation of debts incurred to improve the Queen Valley house.

¶ 5 Husband had purchased the Sugar Creek house in 1989 for $123,000. At the time of trial, the parties stipulated that the value of the house was $350,352. The property was encumbered by a first mortgage of approximately $71,000 and the $30,000 home equity line of credit used to improve Wife's residence. Husband acknowledged that in executing the deed to the Sugar Creek property, he gave Wife a one-half interest in the property. He took the position that transfer of the house was "procured by misunderstanding, fraud, or coercion." Alternatively, Husband asserted that if he did gift one-half

---

1. Wife's son moved into the Sugar Creek house when Husband and Wife moved to the Queen Valley house. The son lived in the Sugar Creek house for about four months and paid rent of $600 per month for two of those four months; he ceased paying rent when Husband gave him notice to vacate the property.

2. The record indicates that the community incurred the following debts: (1) a home equity loan on the Sugar Creek house for $30,000, (2) Home Depot credit card for $3,180; (3) Visa credit card for $9,157; (4) Mohawk flooring line of credit for $15,490; and (5) JCPenney credit card for bedroom furniture for $3,887.

of the property to Wife, equitable principles favored awarding him the entire property.

¶ 6 Conversely, Wife argued that both the transfer of an interest in the Sugar Creek house and the expenditures made on the Queen Valley house were gifts from Husband to her; therefore, she claimed entitlement to an equal portion of the value of the Sugar Creek house and asserted that Husband should be solely liable for the debts incurred to improve her sole and separate property. Alternatively, Wife argued that if the improvements to her separate property were not gifts, then the debts should be divided equally between the parties.

¶ 7 The court denied Husband's petition for annulment, reasoning that later-in-life marriages are often entered into for reasons other than a sexual relationship, such as companionship, and even if Wife married Husband for financial reasons, she still demonstrated genuine affection towards him as both parties had suffered significant personal losses that may have brought them together. The court thus determined that a valid marriage existed.

¶ 8 As to the division of property and debts, the court did not expressly determine whether Husband's transfer of title to the Sugar Creek house constituted a gift to the community; however, based on the assumption it was a "gift without legal or factual impediment," the court recognized it was obligated to consider the "overall issue of fairness and equity" in allocating the value of the house. The court also noted that with respect to the debts incurred to improve the Queen Valley house, "technically, the community contributed the funds"; not Husband.

¶ 9 Applying the concepts of equity discussed in *Toth v. Toth*, the family court determined the circumstances presented here fell within the rare exception to the general rule that an equitable property division should be substantially equal. 190 Ariz. at 221, 946 P.2d at 903. Accordingly, the court awarded all right, title, and interest in the Sugar Creek house to Husband, recognizing that (1) no community funds were used to improve the residence; (2) there was

no effort, toil, or contribution from the community to increase the property's value; and (3) Husband's pre-marital equity in the property decreased as a result of funds drawn against the line of credit loan used to fund improvements to Wife's residence. The court concluded that "to the extent Wife can assert she was due any greater sums for her share of the Sugar Creek residence pursuant to [Arizona Revised Statutes ("A.R.S.") section] 25–318(A), such 'equitable claims' are more than compensated by the improvements made to her sole and separate property, the denial of any equitable lien thereon [,] and the assignment of debt (including the line of credit)" to Husband.

¶ 10 The court also determined that the Queen Valley house was Wife's sole and separate property free from any claims of Husband, including any equitable liens arising from community debt incurred to fund improvements to it. Additionally, the court ordered that Husband be responsible for payment of approximately $42,000 in debts incurred for the improvement of the Queen Valley house and that Wife be responsible for the remaining debts incurred to improve her house, approximately $16,000. Wife timely appealed and we have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### I. The Sugar Creek Residence

¶ 11 Wife argues the family court "erred as a matter of law by expanding the findings of *Toth* ... beyond the very rare facts of that case." She asserts that the property division should have been substantially equal and the court's decision to award the Sugar Creek residence to Husband is inequitable as a matter of law. She also argues that the court abused its discretion when it acknowledged that Husband's gifts must be given legal effect, but at the same time ordered Wife to pay part of the debts associated therewith.

¶ 12 The division of marital property in a dissolution proceeding is governed by A.R.S. § 25–318(A) (Supp.2009),[3] which pro-

3. We cite the current version of the applicable
statutes if no revisions material to this decision

vides that courts "shall assign each spouse's sole and separate property to such spouse" and shall "divide the community, joint tenancy and other property held in common equitably, though not necessarily in kind [.]" All property acquired during marriage is presumed to be community property, except property a spouse acquires by gift, devise, or descent. A.R.S. § 25–211(A) (Supp.2009); *Thomas v. Thomas*, 142 Ariz. 386, 392, 690 P.2d 105, 111 (App.1984). Likewise, all debt incurred by either spouse during marriage is presumed a community obligation. *Hrudka v. Hrudka*, 186 Ariz. 84, 91–92, 919 P.2d 179, 186–87 (App.1995).

 ¶ 13 As recognized by our supreme court, the general principle is that "all marital joint property should be divided substantially equally unless sound reason exists to divide the property otherwise." *Toth*, 190 Ariz. at 221, 946 P.2d at 903 (citing *Hatch v. Hatch*, 113 Ariz. 130, 133, 547 P.2d 1044, 1047 (1976)). "That approach simply reflects the principle that community property implies equal ownership." *Id.* at 221, 946 P.2d at 903 (citation omitted). Thus, in most cases, dividing jointly held property equally will be the most equitable. *Id.*.

 ¶ 14 In determining an equitable division, the family court has broad discretion in the specific allocation of individual assets and liabilities. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13, 167 P.3d 705, 708 (App.2007). Under A.R.S. § 25–318(C), consideration may be given to (1) excessive or abnormal expenditures and (2) the destruction, concealment, or fraudulent disposition of property. But the family court's attempt to achieve an equitable division is not limited by these statutory factors; instead, the court may consider other factors that bear on the equities of a particular case. *Toth*, 190 Ariz. at 221, 946 P.2d at 903. In balancing such equities, courts might reach different conclusions in similar cases without abusing their discretion. *Kay S. v. Mark S.*, 213 Ariz. 373, 383, ¶ 51, 142 P.3d 249, 259 (App.2006). Thus, we will not disturb a court's ruling absent a clear abuse of discre-

have since occurred.

tion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5, 972 P.2d 676, 679 (App.1998).

## A. Joint Title Gift Presumption

 ¶ 15 When real property is held as separate property by one spouse but title is subsequently taken in the name of both spouses, a presumption exists that the contributing spouse intended to make a gift to the other spouse of a one-half interest in the property.[4] *See, e.g., Toth*, 190 Ariz. at 220–21, 946 P.2d at 902–03 (citing *Becchelli v. Becchelli*, 109 Ariz. 229, 232, 508 P.2d 59, 62 (1973), *superseded on other grounds by statute as stated in Jordan v. Jordan*, 132 Ariz. 38, 39, 643 P.2d 1008, 1009 (1982); *Valladee v. Valladee*, 149 Ariz. 304, 308, 718 P.2d 206, 210 (App.1986)). The presumption may be rebutted through clear and convincing evidence showing the lack of intent to make an interspousal gift. *Becchelli*, 109 Ariz. at 232, 508 P.2d at 62; *Valladee*, 149 Ariz. at 307, 718 P.2d at 209. In the context of marriage, gifts of jointly held property do not constitute irrevocable inter vivos transfers; instead, "[t]hey are made in expectation of a permanent relationship, but if cut short, fully subject to equitable divestment under the statute." *Toth*, 190 Ariz. at 221, 946 P.2d at 903. Thus, jointly held property may be divided equitably rather than equally; however, a court may not order a substantially unequal division of such property solely to reimburse the purchasing spouse. *See Toth*, 190 Ariz. at 222, 946 P.2d at 903.

¶ 16 Here, although Husband argued at trial that his transfer of title of the Sugar Creek house into joint ownership was not intended to be a gift, he does not raise the same contention on appeal. Had Husband been able to overcome the gift presumption by clear and convincing evidence, an equitable analysis under *Toth* would have been unnecessary because the property would have retained its original sole and separate character and been assigned to Husband in accordance with A.R.S. § 25–318(A). His attempt to rebut the presumption, however, was unsuccessful. As such, the Sugar Creek

4. Under A.R.S. § 25–318, all forms of jointly held marital property are treated alike when making equitable divisions upon dissolution.

residence was subject to equitable division under A.R.S. § 25–318(A).[5]

¶ 17 We therefore reject Wife's contention that Husband's failure to rebut the gift presumption precluded the family court from considering whether the gift was subject to equitable divestment under *Toth*. Rebuttal of the gift presumption merely establishes the absence of donative intent. Departure from a substantially equal distribution under *Toth*, on the other hand, rests on principles of fairness and equity. Husband's failure to rebut the gift presumption is precisely why the family court could properly consider whether equitable divestment under *Toth* was appropriate. Although spouses may gift property interests to one another, jointly titled property interests only represent equitable rights; they do not constitute irrevocable gifts of a one-half interest. *Toth*, 190 Ariz. at 221, 946 P.2d at 903.

### B. Equitable Property Division under *Toth*

¶ 18 Although the family court must divide community and jointly held property equitably upon dissolution of the marriage, a substantially equal division is not required if a sound reason exists to divide the property otherwise. *Toth*, 190 Ariz. at 221, 946 P.2d at 903 (citing *Hatch*, 113 Ariz. at 133, 547 P.2d at 1047). The touchstone of determining what is "equitable" is a "concept of fairness dependent upon the facts of particular cases." *Id.* at 221, 946 P.2d at 903.

¶ 19 In *Toth*, our supreme court analyzed the meaning of "equitable" as used in A.R.S. § 25–318(A), and concluded that in addition to the statutorily enumerated factors, a court may consider the source of the funds used to purchase or improve the property in question and any "other equitable factors that bear on the outcome" of an equitable division, such as, but not limited to, the duration of the marriage. *Id.* at 219–22, 946

P.2d at 901–04. The husband in *Toth* used $140,000 of his separate funds to buy a house that the couple took title to as joint tenants with right of survivorship. *Id.* at 219, 946 P.2d at 901. In doing so, he made a presumptive gift to his wife of a one-half interest in the house. *Id.* at 220, 946 P.2d at 902. The marriage, however, lasted only two weeks.[6] *Id.* at 219, 946 P.2d at 901. In dividing the marital property, the family court awarded wife $15,000 as her share in the property, notwithstanding it was the only marital asset to be divided. *Id.*

¶ 20 On appeal, this court held that the family court abused its discretion in ordering a substantially unequal division of the house. *Id.* Our supreme court disagreed, finding that a deviation from an equal division of the property was appropriate given that wife had "made no contribution—pecuniary or otherwise—to the purchase of the house" and the extremely short union allowed "no time for a marital relationship to develop, or for other equities to come into play." *Id.* at 221, 946 P.2d at 903. The court emphasized that the award was not made "solely" to ·reimburse the contributing spouse for the separate funds used to buy the house. *See id.* at 222, 946 P.2d at 904 (citing *Whitmore v. Mitchell*, 152 Ariz. 425, 733 P.2d 310 (App.1987) (recognizing that a court may not order a substantially unequal division of jointly held property solely to reimburse one of the spouses for spending his or her separate funds to acquire the property); *Valladee*, 149 Ariz. 304, 718 P.2d 206 (finding that trial court abused its discretion in making a substantially unequal division of the jointly held property solely to reimburse husband for expending his separate funds to initially acquire the property)). Rather, the court recognized the case as being an unusual situation where "equal was not equitable" and fairness required that the property "not be characterized as community and should, instead, be awarded [in large measure] to one

---

5. Although the family court did not expressly find that Husband's decision to transfer title constituted a gift of the property to the community, it impliedly found as much by proceeding with an analysis of equitable division.

6. *Toth* is often referred to as a "two-week" marriage because the Husband moved out of the marital bedroom two weeks after the couple's nuptials. For clarification, the couple was married for twenty-eight days before the husband filed for dissolution. *See Toth*, 190 Ariz. at 219, 946 P.2d at 901.

spouse accordingly." *Id.* at 221–22, 946 P.2d at 903–04 (citation omitted).

¶ 21 Consistent with these principles, the family court in the present case acted within its discretion when it considered various equitable factors to divide marital assets and liabilities, including the source of funds used to acquire the community property and the contributions made by each spouse toward the improvement of it, the improvements made by the community to one spouse's sole and separate property, the division of marital debts, and the length of the marriage.

### 1. Contributions Made to the Sugar Creek House

■ ¶ 22 A determination of what constitutes an equitable division of marital property must include consideration of contributions made by each spouse to the community, in whatever form. *Toth,* 190 Ariz. at 222, 946 P.2d at 904. As the court in *Toth* explained, this inquiry recognizes that under community property principles, spouses work together to accumulate property. *Id.* at 221, 946 P.2d at 903. Thus, if a spouse contributes to the marital relationship as a whole or improves the value of the specific property in question, *e.g.,* using either money or labor, then an unequal property division would not be justified so long as these contributions were not completely negligible. *Id.; cf. Flynn v. Allender,* 75 Ariz. 322, 325, 256 P.2d 560, 562 (1953) (holding $18 in community funds used as a down payment on a new car purchase was so insignificant when compared to husband's car, which was valued at $1,095 as a trade-in, that it was merged with husband's separate property).

¶ 23 Wife does not assert that she made any contributions to the purchase or improvement of the Sugar Creek house nor does she allege she made pecuniary contributions to the community in other areas or that any effort, toil, · or contributions from the community were comingled with the property to increase its value. To the contrary, the value of the Sugar Creek house was reduced by the home equity loan used to improve the Queen Valley house. Wife's lack of contribu-

tions provides at least partial justification for a substantially unequal division of the community property by awarding the Sugar Creek house to Husband.

### 2. Division of Other Marital Assets and Debts

■ ¶ 24 Division of property upon dissolution should also take into consideration the overall marital estate. *See Valladee,* 149 Ariz. at 310, 718 P.2d at 212. The parties here incurred various debts during the marriage; some were to acquire personal property used by the community, others were to improve Wife's Queen Valley house. Because debt incurred during marriage is presumed to be community in nature, the spouse contesting this characterization must establish by clear and convincing evidence that the debt is actually a separate obligation. *See Am. Express Travel Related Serv. Co., Inc. v. Parmeter,* 186 Ariz. 652, 654, 925 P.2d 1369, 1371 (App.1996). Likewise, assets acquired during marriage are presumed to belong to the community subject to the same evidentiary requirement. *Armer v. Armer,* 105 Ariz. 284, 287, 463 P.2d 818, 821 (1970).

¶ 25 Here, the parties incurred as much as $58,000 in debt to improve Wife's Queen Valley residence during the marriage.[7] The family court ordered Husband to assume responsibility for approximately $42,000 of the Queen Valley house improvement debt and Wife to assume responsibility for approximately $16,000. It also awarded all assets associated therewith to Wife.

¶ 26 The parties dispute the characterization and allocation of the Queen Valley improvement debts. At trial, Husband argued that Wife should be held liable for all debts associated with the improvements to the Queen Valley house, since she alone received the benefit of those improvements. He also claimed an equitable lien on the Queen Valley house to the extent that his Sugar Creek residence had been encumbered for Wife's separate property improvements. Wife, on the other hand, asserted, as she does on

---

7. Except for the $3,887 JCPenney debt used to purchase bedroom furniture, much of the remaining $61,000 debt was used to improve the Queen Valley house.

appeal, that she should be awarded those improvements free from claims by Husband and that Husband should be held solely liable for those debts because they represented gifts to her. In the alternative, Wife argued that if the improvements to her house were not a gift to her, then each party should be responsible for one-half of the principal obligation. Notably, on appeal she does not suggest how the assets associated with the improvement debts should be allocated in the event they were not gifts.

¶ 27 It has long been held that when community funds are expended to improve the separate property of one spouse, the community does not acquire an interest in the separate property, but it does acquire a claim for reimbursement in accordance with the amount of community funds expended. *Kingsbery v. Kingsbery*, 93 Ariz. 217, 225, 379 P.2d 893, 898 (1963); *Lawson v. Ridgeway*, 72 Ariz. 253, 261, 233 P.2d 459, 465 (1951).

¶ 28 In this case, although the exact amount of debt incurred by the community to improve the Queen Valley house is disputed, the evidence shows that the community incurred approximately $61,000 of debt, the vast majority of which was used to improve Wife's Queen Valley residence. A significant portion of that debt came from the home equity loan secured by the Sugar Creek house; another sizable portion is attributable to a line of credit used to finance the purchase and installment of new flooring. A strictly equal division of these debts and assets would result in Husband and Wife each being obligated on one-half of the total debt and each being awarded, or otherwise credited, one-half of the value of the improvements made. But an equal and like division is not required. A.R.S. § 25–318(A); *Toth*, 190 Ariz. at 222, 946 P.2d at 904. Moreover, the family court has broad discretion in determining an equitable division. *See Boncoskey*, 216 Ariz. at 451, ¶ 13, 167 P.3d at 708.

¶ 29 Although the family court did not specifically identify the facts upon which it relied to support its conclusion, under the circumstances presented we presume the court allocated the home equity loan and other Queen Valley improvement debts as Husband's separate obligation in light of the court's equitable divestment of Wife's one-half interest in the Sugar Creek residence. We also presume the court allocated the remainder of the Queen Valley improvement debts to Wife to balance the equitable scale. Such a determination falls within the court's discretion based on the facts of the case.

### 3. Length of the Marriage

¶ 30 Wife asserts that an equitable division in the case before us demands a substantially equal division based on the length of her marriage to Husband. She attempts to distinguish her thirteen-month marriage with Husband from the marital relationship in *Toth*, which effectively lasted two weeks, solely on the basis of overall duration. She vigorously argues that expanding *Toth's* scope beyond a two-week marriage increases the uncertainty parties face during a dissolution proceeding and threatens to undermine community property concepts.[8]

¶ 31 But nowhere in *Toth* does the length of the marriage play such a singularly significant factor in the final assessment of what is determined to be equitable under the circumstances. Under *Toth*, the family court is free to consider any factor that has bearing on the equitable division of the marital property; how long a marriage lasts is but one factor, albeit an important one, in the assessment of what constitutes an equitable property division. *Toth*, 190 Ariz. at 222, 946 P.2d at 904. In the final analysis, *Toth's* essential holding is that when the legislature enacted § 25–318, it intended courts to consider "fairness" on a case-by-case basis, rather than being bound by *per se* rules. *See Kelly v. Kelly*, 198 Ariz. 307, 309, ¶ 8, 9 P.3d 1046, 1048

---

8. Alternatively, Wife claims the right to receive a specific percentage of the asset based on the ratio of the award in *Toth* ($140,000 for husband to $15,000 for wife, or greater than 10 percent). She argues that the supreme court's approval of a $15,000 award in *Toth* for a "two-week" marriage mandates a substantially equal award here because this marriage lasted over a year, essentially fully vesting her equal division rights. We do not view *Toth* as authorizing a pro rata share of an asset based solely on the length of a marriage. Thus, we reject Wife's request to divide the Sugar Creek house based on the "vesting" of her marriage.

(2000) (citing *Toth,* 190 Ariz. at 221, 946 P.2d at 903).

¶ 32 The court's order here fits within *Toth's* limited emphasis on the length of marriage. Although the family court did not expressly rely on the length of marriage as a basis for its final order, the court did acknowledge the relatively short duration of the marriage. In addition, as noted, the court focused on the pre-marriage character of the assets in question, the allocation of community debt in relation to the retention of assets associated therewith, and the legal consequence of interspousal gifts upon dissolution. It was within the court's discretion to consider such factors when determining an equitable division of the marital property.

¶ 33 Nonetheless, Wife argues that *Toth* suggests a "length-of-marriage" test by characterizing any marriage that survives more than one year as one of "significant duration." 190 Ariz. at 222, 946 P.2d at 904 (distinguishing *Whitmore,* 152 Ariz. 425, 733 P.2d 310, a case in which the marriage lasted sixteen months and an unequal property division was not upheld). Relying on *Toth's* citation to *Whitmore,* Wife argues that her thirteen-month marriage precludes application of a *Toth* analysis. The citation to *Whitmore,* however, cannot be relied on for this proposition because the majority in *Toth* also distinguished *Whitmore* on the grounds it involved a prenuptial agreement, which controlled the character of jointly held property in that case. *See id.* Further, the *Toth* court cited *Whitmore* as an example of when "other equities" come into play to make a division based solely on reimbursement inappropriate—in that case, a controlling prenuptial agreement; the court did not reference it as an example of the outer boundaries in applying a "length-of-marriage" analysis. *See id.*

¶ 34 Regardless, the length of a marriage is a factor to be considered in balancing the equities of property division. In the case before us, while the legal duration of the marriage was just over one year, the record reflects that Husband moved out of the marital home less than eleven months after the wedding, and that the marital relationship was strained and deteriorating less than eight months after the couple exchanged vows. By almost any account this would be considered a short marriage, where there was insufficient time for other equities to tip the scale in favor of substantially equal distribution.

¶ 35 We conclude by emphasizing that in our view, a substantially unequal division of property must continue to represent a rare exception, lest it undermine the entire framework for dividing property during a marriage dissolution in Arizona. As such, this opinion should not be read as sanctioning automatic justification for an unequal division in any marriage of "short duration" where one spouse's sole and separate property was gifted to the community, as the equitable divestment of a gifted property interest will still be inappropriate in the vast majority of dissolution proceedings.

## II. Attorneys' Fees

¶ 36 Both parties request attorneys' fees on appeal under A.R.S. § 25–324 (Supp. 2009), which allows an award of fees to one spouse after considering the relative financial resources and the reasonableness of each party's position taken during litigation. In our discretion, we decline to award fees to either party.

## CONCLUSION

¶ 37 We concur with the family court's determination that this case involves circumstances that, like *Toth,* place it outside the general rule that an equitable property division must be substantially equal. Accordingly, we affirm the family court's ruling and hold that the court did not abuse its discretion in awarding to Husband all rights and interest in the Sugar Creek house or in allocating the community debts and assets.

CONCURRING: PHILIP HALL, Presiding Judge and MAURICE PORTLEY, Judge.