NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CYNTHIA LYNNE SMITH, *Petitioner/Appellee/Cross-Appellant*,

*v.*

JILL MAUREEN HARTER, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 25-0021 FC

FILED 10-27-2025

Appeal from the Superior Court in Maricopa County
No. FN2023-001927
The Honorable Amy Michelle Kalman, Judge

**AFFIRMED IN PART, REVERSED IN PART**

COUNSEL

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner/Appellee/Cross-Appellant*

Modern Law, PLLC, Mesa
By Kylie Bigelow
*Counsel for Respondent/Appellant/Cross-Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Daniel J. Kiley and Judge Brian Y. Furuya joined.

_____

**P A T O N**, Judge:

¶1         Jill Maureen Harter appeals from certain provisions of the decree dissolving her marriage to Cynthia Lynne Smith.  Smith cross-appeals.  We affirm in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

¶2         Harter and Smith married in 2016.  Harter owned a bank account ("the account") before marriage.  After their marriage, the parties paid community expenses using the account's funds and replenished the account with funds from a joint account.

¶3         Harter also owned a house ("the house") before marriage. She paid the down payment and financed the remainder of the purchase price.  In 2009, Smith moved into the house with Harter.  In 2021, the parties created a joint trust and transferred the house into it.

¶4         Smith petitioned for dissolution in 2023.  A few months later, she obtained an order of protection against Harter, alleging domestic violence.  The order, which granted Smith exclusive use and possession of the house, was affirmed after a contested hearing.

¶5         At trial, Harter claimed the account was her separate property.  She testified that the account held nearly $200,000 of her separate funds when she married Smith, and that she deposited separate funds gifted to her into the account after marriage.  The parties withdrew funds from the account to pay community expenses and deposited community funds into the account, but Harter insisted that her separate funds were traceable.

¶6         The superior court held that the separate and community funds had become sufficiently commingled such that the account should be treated as community property.  It divided the proceeds equally.

¶7         In addition to the account, Harter argued the house was her separate property and Smith claimed it was community property.  Harter

relied on the document establishing the parties' joint trust, which stated that separate property put into the trust would remain separate. Smith countered that the deed transferring the house to the trust specified it was "to be held as community property."

¶8 The superior court determined that the deed gifted the house to the community. It divided the house's value equally between the parties but ordered Smith to reimburse Harter for her down payment and pre-marriage mortgage payments.

¶9 Harter further claimed she was ousted from the house by the order of protection and sought reimbursement of half of the house's rental value for the time she could not live in the house. The superior court denied her request, finding she was not ousted because her own actions caused her removal from the house.

¶10 Harter and Smith each sought attorneys' fees, claiming the other acted unreasonably throughout the proceedings. The court found that both parties had acted unreasonably and that no financial disparity existed. It denied both requests.

¶11 Smith moved to amend the decree, claiming the superior court erred by ordering her to reimburse Harter's pre-marriage mortgage payments because Harter presented insufficient evidence of the amounts. The superior court agreed and amended the decree. Harter moved for reconsideration, arguing the court failed to consider all the evidence. The court denied her motion.

¶12 Harter appealed, and Smith cross-appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1)-(2).

## DISCUSSION

I. **The superior court properly characterized the account and house as community property.**

¶13 Harter asserts that the court erred in determining that the house and the account were community property. "We review de novo the [superior] court's characterization of property as separate or community." *Kim v. Pak*, 258 Ariz. 594, 596, ¶ 7 (App. 2024). But we do not disturb its factual findings absent clear error. *Id.*

3

### a. The account's proceeds were transmuted to community property.

¶14 Property owned by a spouse before marriage is that spouse's separate property. A.R.S. § 25-213(A). But "[s]eparate property may be transmuted into community property when it is commingled so much that its identity . . . as separate or community is lost." *Kim*, 258 Ariz. at 597, ¶ 9 (citation omitted). When commingling occurs, the entire account becomes community property "unless the separate property can be explicitly traced." *Cooper v. Cooper*, 130 Ariz. 257, 259 (1981) (citation omitted). The party claiming commingled funds are their separate property bears the burden to prove that fact and the separate amount by clear and satisfactory evidence. *Id.* at 259-60.

¶15 Harter insists that the account is her separate property because her separate funds are "fully traceable[,]" apparently based on her submitted exhibit #B-24 and testimony. But evidence showed the account funds were used to pay community expenses, including for a home improvement loan, and were replenished with community funds from a joint account. The court also found Harter's demonstrative exhibit unpersuasive because it failed to explain how or why she classified expenses as community or separate. Therefore, the court found that Harter had not met her burden of proving any or all of the funds in the account were separate. The evidence supported this determination, and thus the court did not err in characterizing the account as community property.

### b. The court properly determined that the house was gifted to the community.

¶16 Property acquired before marriage may also become community property when gifted to the community. *See In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 15 (App. 2010). Separate real property, title to which is later transferred into the name of both spouses, is presumed to be a gift to the community absent clear and convincing evidence showing lack of donative intent. *Bobrow v. Bobrow*, 241 Ariz. 592, 594-95, ¶ 8 (App. 2017). Whether a gift was made is a factual determination that we uphold unless clearly erroneous. *Id.* at 595, ¶ 11.

¶17 Harter argues the house remained her separate property even though it was transferred into the parties' joint trust "to be held as community property" because the trust document provided that separate property put into it would remain separate. Although the trust document stated that the parties' "separate property may be identified as the separate

property of either of us on the attached schedules[,]" the parties did not list the house or any other separate property in the attached schedules. And the parties' warranty deed transferring the house into their joint trust provided that the house was "to be held as community property." The court found the deed expressly providing that the house was community property more convincing evidence of the parties' intent than the trust document and that Harter failed to credibly explain at trial why the "clear language on the deed" did not transmute it to community property. We do not reweigh the evidence on appeal. *Kim*, 258 Ariz. at 596, ¶ 7. Sufficient evidence supported the court's conclusion that Harter gifted the house to the community.

## II. The superior court failed to equitably divide the house's proceeds.

**¶18** Both parties challenge the superior court's division of the proceeds from the sale of the house. We review the division of community property for an abuse of discretion. *Id.* The superior court abuses its discretion when the record is "devoid of competent evidence to support" its decision. *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999) (citation omitted). Community property must be divided equitably. A.R.S. § 25-318(A); *In re Marriage of Inboden*, 223 Ariz. 542, 544, ¶ 6 (App. 2010). Equal division is presumed to be equitable "unless there exists a sound reason to divide the property otherwise." *Inboden*, 223 Ariz. at 544, ¶ 6.

**¶19** Harter argues the superior court erred by (1) not ordering Smith to reimburse her pre-marriage mortgage payments, (2) not allocating the pre-marriage appreciation in the house's value to her, and (3) not ordering Smith to reimburse her for half of the house's fair rental value while she was ousted. Smith argues the superior court erred by ordering her to reimburse Harter's pre-marriage down payment made on the house because the court's findings did not support unequal division.

### a. Harter is not entitled to reimbursement for mortgage payments she made before marriage.

**¶20** Harter claims the superior court erred by amending its order to no longer require Smith to reimburse Harter's pre-marriage mortgage payments. But Harter only cursorily mentions this claim and fails to develop any argument on this issue in her opening brief. She has therefore waived this issue on appeal. *See* ARCAP 13(a); *Waltz Healing Ctr., Inc. v. Ariz. Dep't of Health Servs.*, 245 Ariz. 610, 616, n.4 (App. 2018) (failure to develop argument or present supporting authority on appeal waives issue).

### b. Harter is not entitled to pre-marriage house appreciation.

**¶21**         Harter next contends the superior court abused its discretion by failing to allocate the house's pre-marriage appreciation to her.  But she cites no authority holding that the court must do so.  Instead, she cites cases holding the community is entitled to an equitable lien against the separate property of one spouse when the community contributes to the increase in the property's value.  *See Kim*, 258 Ariz. at 597, ¶¶ 8, 10; *Brucklier v. Brucklier*, 253 Ariz. 579, 584, ¶ 22 (App. 2022).  These cases are inapposite.  And as discussed above, the superior court properly determined the house is not Harter's separate property.  Therefore, the value of the entire property was gifted to the community.  *See Inboden*, 223 Ariz. at 545, ¶¶ 10-11.

### c. The superior court properly denied Harter's request for reimbursement of the house's fair market rental value.

**¶22**         Harter next argues she is entitled to reimbursement for the fair market rental value of the house because she was ousted by the order of protection against her.  But she asks us to recognize affirmative ouster as the basis for her claim, which no Arizona court has recognized.  We need not reach this issue because Harter has not proven she was ousted.

**¶23**         Whether a spouse has been ousted is a factual finding that we will not reverse unless clearly erroneous.  *Ferrill v. Ferrill*, 253 Ariz. 393, 398, ¶ 17 (App. 2022); *Walsh v. Walsh*, 230 Ariz. 486, 490, ¶ 9 (App. 2012).  Ouster occurs when a co-tenant notoriously and unequivocally acts to deprive another of the right to the common and equal possession and enjoyment of the property.  *Morga v. Friedlander*, 140 Ariz. 206, 208 (App. 1984).  But Harter was not ousted by Smith.  As the superior court correctly noted, her own acts of violence and harassment led to the issuance of an order of protection against her, which was later affirmed.  And the record showed that despite multiple efforts, Smith was only able to stop Harter from harassing her through an order of protection.  The court did not abuse its discretion in determining Harter was not ousted from the community home and therefore not entitled to reimbursement.

### d. The superior court erred by ordering Smith to reimburse Harter's down payment.

**¶24**         In her cross-appeal, Smith contends the superior court abused its discretion by ordering Smith to reimburse Harter's down payment.  Specifically, Smith argues that "despite finding that **none** of the *Inboden* factors that might weigh in favor of an unequal division of property were present in this case, the [] court concluded that an unequal division of the

marital residence was necessary in order to reimburse [Harter] for her downpayment on the marital residence."

¶25 Under Section 25-318(A), the superior court must divide community property "equitably." Generally, "an equitable division of jointly held property should be substantially equal absent facts to support a contrary result." *Inboden*, 223 Ariz. at 546, ¶ 14.

¶26 When property purchased with a spouse's separate funds is gifted to the community, the gift "encompasses any monies spent in the past by [the spouse] in order to acquire it." *Valladee v. Valladee*, 149 Ariz. 304, 310 (App. 1986). Therefore, the court may not order unequal division solely to reimburse a spouse for separate funds used to acquire the property. *Inboden*, 223 Ariz. at 545, ¶ 11. Instead, the court must consider other relevant factors to determine whether unequal division is necessary to achieve equitable division. *See id.* at 546-47, ¶¶ 17-18. These factors include the length of the marriage, the contributions of each spouse to the community, financial or otherwise, the source of funds used to acquire the property to be divided, and the allocation of debt. *Id.* at 547, ¶ 18. But if a spouse contributes to the marriage as a whole or improves the value of the property in question, "an unequal property division would not be justified so long as these contributions were not completely negligible." *Id.* at ¶ 17.

¶27 Here, the court found Smith contributed both to the community and improving the house. The court specifically noted that Smith provided Harter with health insurance and contributed to a major remodel of the house. Her contributions were "not completely negligible," so an unequal property division is not justified. *See id.*

¶28 In fact, the court expressly distinguished this case from *Flower*, 223 Ariz. at 531-39. There, we upheld unequal division because (1) the parties were married for only thirteen months, (2) Wife made no contributions to the community nor the value of the house, but (3) instead caused Husband's equity in the house to decrease by taking out a loan against it to improve her own house. *Id.* at 534, 537-39, ¶¶ 9, 23, 30, 37. But here, the court found that (1) Harter and Smith's marriage lasted far longer, (2) both parties contributed to the house, and (3) Smith did nothing to decrease the equity in the house.

¶29 Beyond these facts, all of which support equal division, the court made no other findings to support its decision to order unequal division. And our review of the record revealed no facts that could support

it. Accordingly, the court erred in ordering unequal division of the house. We therefore reverse that portion of the superior court's order.

### III. The superior court did not abuse its discretion by denying both parties' attorneys' fees.

**¶30**     Both parties contend that the superior court erred by denying their request for attorneys' fees. We review attorneys' fees decisions for abuse of discretion and will not disturb the superior court's order "if there is any reasonable basis for it." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004) (citation omitted). Under Section 25-324(A), a court may award attorneys' fees after considering the reasonableness of a party's positions and the financial resources of both parties.

**¶31**     Here, the superior court found both parties acted unreasonably by withdrawing funds from joint accounts in violation of the court's preliminary injunction. Harter also refused to return the entire amount she improperly withdrew, requested Smith pay over $1,000 a month for mortgage even after the mortgage had already been paid off, refused to disclose mortgage statements, and harassed Smith, forcing her to obtain an order of protection. The court further found there was no substantial disparity of financial resources between the parties. We discern no abuse of discretion.

**¶32**     Both parties request their attorneys' fees under Section 25-324. In the exercise of our discretion, we decline both requests. As the prevailing party, Smith is entitled to her reasonable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶33**     We reverse the portion of the decree ordering Smith to reimburse Harter's down payment and affirm in all other respects.

