NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CATHRYN CONSTANTINE,
*Petitioner/Appellee*,

*v.*

TINO CONSTANTINE,
*Respondent/Appellant*.

No. 1 CA-CV 25-0552 FC

FILED 06-08-2026

Appeal from the Superior Court in Maricopa County
No.  FN2022-001675
The Honorable Michelle Carson, Judge

**AFFIRMED**

COUNSEL

Genesis Legal Group, Gilbert
By Kevin Jensen
*Counsel for Respondent/Appellant*

Michael J. Shew, LTD., Phoenix
By Michael J. Shew
*Counsel for Petitioner/Appellee*

<hr>

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

<hr>

**B E C K E**, Judge:

¶1        Tino Constantine ("Husband") appeals the superior court's decree of dissolution of his marriage to Cathryn Constantine ("Wife"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Husband and Wife met in 2010 and married in January 2016. Husband owned several real estate investment properties before the marriage, and LLCs were created to hold the properties. Three such LLCs are at issue here: Katina Saffron, LLC ("Katina Saffron"), Tino Menlo, LLC ("Tino Menlo"), and Kifissia, LLC ("Kifissia").[1] The LLCs did not have written operating agreements, and both Husband and Wife were listed in the articles of organization as the members of all three LLCs.

¶3        Katina Saffron was formed before the parties married. In 2015, Husband purchased property in Mesa (the "Saffron property") using about $146,000 of his funds and about $118,000 that Wife contributed from the sale of a condominium she owned.

¶4        After Husband and Wife (who were not then married) purchased the Saffron property, they transferred it by quitclaim deed to Katina Saffron. After the marriage, Katina Saffron sold the Saffron property, and the proceeds of $481,395.55 were deposited into Katina Saffron's bank

<hr>

[1] Husband, Wife, and Wife's father also created Athens, LLC. Wife's father's ownership interest in Athens, LLC was the subject of a prior appeal. *Constantine v. Constantine*, 1 CA-CV 23-0379 FC, 2024 WL 3335879 (Ariz. App. July 9, 2024) (mem. decision). That appeal affirmed that Wife's father had a 50% ownership interest in Athens, LLC based on a settlement agreement between Husband and Wife's father. *Id.* at 4, ¶ 18. We left the division of the other 50% to continued litigation. *Id.* at ¶ 21. Those actions do not impact the present appeal, and Husband does not claim error in the decree's division of the other 50% of Athens, LLC.

account. The parties then used $420,029.62 of the proceeds to purchase a certificate of deposit ("AmTrust CD").

¶5            Tino Menlo was also formed before the marriage. In 2015, Husband purchased another property in Mesa (the "Portia property"). The purchase funds consisted of about $173,000 of Husband's money and about $69,000 from a Wells Fargo bank account in both Husband's and Wife's names. Husband then transferred the Portia property to Tino Menlo via quitclaim deed a few weeks before the marriage.

¶6            Kifissia was formed after the marriage. In May 2016, a few months after the couple were married, Husband purchased a property (the "Menlo property") with proceeds from the sale of another property he owned prior to the marriage. At that time, Wife signed a disclaimer deed for the Menlo property, acknowledging that it was Husband's sole and separate property. About a year later, a few days after Kifissia was formed in May 2017, Husband transferred the Menlo property to Kifissia.

¶7            In 2022, Wife petitioned for dissolution of marriage. The LLCs were joined as parties. Wife moved for pre-decree temporary orders and requested: (1) equal possession of liquid assets under A.R.S. § 25-315(E); (2) to enjoin Husband and the LLCs from selling property; and (3) to order Husband to pay Wife's attorneys' fees.

¶8            At a temporary orders hearing, Wife presented evidence concerning six bank accounts, asserting that Husband made improper post-petition withdrawals from five of them. The court found that "Wife has shown by a preponderance of the evidence that 50% of the difference between what Husband and Wife withdrew from the parties' various accounts is $341,183.20." The court then ordered that Husband deposit that amount into a restricted joint bank account.[2] Wife was able to withdraw $20,000 as an advance from that account, subject to reallocation if Husband proved at trial that the funds were his sole and separate property. Husband and the LLCs were enjoined from selling property without Wife's consent or court order, and the question of attorneys' fees was deferred until trial.

¶9            Trial on Wife's petition was set for February 2025, with Wife requesting findings of fact and conclusions of law. See Ariz. R. Fam. Law P. 82(a). Wife's pretrial statement alleged that Husband refused to give her tax documents related to the properties, and asked that Husband be ordered to

---

[2] The money was deposited into Wife's counsel's IOLTA account.

"assume, pay, indemnify, and hold Wife harmless" for any tax liability Wife may incur for years 2022-2024.

¶10        At trial, Wife testified that she and Husband agreed to pool their resources, purchase investment properties closer to their home, and place all three properties in both their names to support their retirement. Before they were married, Wife sold her condominium to support this endeavor. She said their agreement gave her a 50% ownership interest in Tino Menlo and Katina Saffron. She also testified that, when she signed the disclaimer deed for the Menlo Property, Husband told her the arrangement would be the same for Kifissia.

¶11        Husband testified that Wife was a member of the LLCs only because he believed an LLC needed more than one member. His stated purpose in creating the LLCs was to avoid collecting rental sales tax from his tenants, not because of any agreement with Wife.

¶12        The court found that, based on the evidence received, including the articles of organization and the parties' course of conduct, Husband and Wife had an oral agreement "regarding the percentage of each member's interest and distributions to the members." That agreement, the court found, was that Husband and Wife each owned a 50% separate property interest in Katina Saffron and Tino Menlo, and that each owned a 50% community property interest in Kifissia. It found that Husband's transfer of the Menlo property to Kifissia was a gift to the community. *See In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 15 (App. 2010) (a gift to the community is presumed when title to separate property is subsequently taken in the names of both spouses). Having made that allocation, the decree allowed Husband to purchase Wife's interest in the Portia and Menlo properties within 30 days, otherwise they were to be sold and the proceeds split 50/50.

¶13        On the equalization payments for the bank accounts, the court found that $341,183.20 accurately reflected the amount Husband owed Wife. Accounting for Wife's $20,000 advance from the restricted account, the court ordered the release of the remaining amount to Wife.

¶14        The decree also ordered that Husband provide to Wife documents necessary to prepare her taxes. Husband was then ordered to "assume, pay, indemnify and hold [Wife] harmless from any additional taxes, interest, penalties, or assessments, including legal accounting, and/or audit expenses, associated with any federal and state income tax returns for the tax periods 2022-2025."

¶15 Husband timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120(A)(1) and -2101(A)(1).

**DISCUSSION**

¶16 Husband raises seven arguments. We address each in turn.

## I. The Superior Court Did Not Err in Dividing Tino Menlo.

¶17 Husband argues that the superior court erred in finding that Tino Menlo is community property. He contends it is separate property, with Husband and Wife owning their separate but unequal interests in it. He therefore argues that Tino Menlo was not community property subject to division in the decree and, accordingly, its assets should be distributed "according to LLC laws."

¶18 Contrary to Husband's argument, the superior court did not find Tino Menlo to be community property. The decree found that Husband and Wife "each own a fifty percent (50%) separate property interest in . . . Tino Menlo, LLC."

¶19 Husband contends that he must receive his initial contribution from Tino Menlo's assets before Wife may receive 50% of the remaining assets. Husband cites A.R.S. § 29-3707(B)(1), which states that when winding up a company, after paying back creditors of the LLC, distributions must first be made to members "owning a transferable interest that reflects contributions made and not previously returned," in "an amount equal to the value of the unreturned contributions."

¶20 We defer to the superior court's factual findings if they are supported by competent evidence, *Borja v. Borja*, 254 Ariz. 309, 313, ¶ 10 (App. 2022), but we review issues of law *de novo*, *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 5 (1999). We will uphold contractual provisions unless prohibited by legislation or contrary to public policy. *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 411–12, ¶ 6 (2014).

¶21 Here, there was no written operating agreement. But the court found that "the parties had an oral agreement regarding the percentage of each member's interest and distributions to the members." *See* A.R.S. § 29-3102(17) (an operating agreement is an agreement "whether or not referred to as an operating agreement and whether oral, implied, in a record or in any combination thereof"). When dividing Tino Menlo, the court found that, based on that oral agreement, Husband and Wife were equal members with an equal interest in the Portia property.

¶22 The court's finding that there was an oral agreement to evenly divide the ownership of Tino Menlo is supported by evidence, and we do not reweigh that evidence. *Clark v. Kreamer*, 243 Ariz. 272, 276, ¶ 14 (App. 2017). Wife testified that she and Husband had an agreement that the Portia property would be transferred to Tino Menlo after its purchase, and that she believed she owned a 50% interest in the Portia property due to that agreement. Husband shows no illegality or violation of public policy where parties agree to distributions that differ from what is provided by § 29-3707(B)(1). *Cf.* A.R.S. § 29-3105(A)(3) (allowing an operating agreement to govern if it conflicts with the rules provided by statute). The court did not err in applying the parties' oral agreement instead of § 29-3707 for winding up Tino Menlo.

¶23 Husband also argues that the superior court did not have the authority to order that the Portia property be listed for sale if he failed to purchase Wife's interest in 30 days. In support of his contention, Husband cites to *Proffit v. Proffit*, 105 Ariz. 222 (1969), and argues that the court may not divest a party of title to their separate property. *See id.* at 224. But Husband did not have title to the Portia property; Tino Menlo owned the property. Husband was therefore not divested of title.

## II. The Superior Court Properly Applied the Gift Presumption to the Menlo Property Transfer.

¶24 Husband asserts that the superior court erred in determining that Husband's transfer of the Menlo property to Kifissia triggered the gift presumption. Husband argues that transferring property to an LLC owned by both spouses does not create a presumption of a gift to the community. We defer to the superior court's factual findings if they are supported by competent evidence, *Borja*, 254 Ariz. at 313, ¶ 10, but we review issues of law *de novo*, *Hall*, 194 Ariz. at 57, ¶ 5.

¶25 A gift to the community is presumed when realty "is held as separate property by one spouse but title is subsequently taken in the name of both spouses." *Flower*, 223 Ariz. at 535, ¶ 15. Husband argues that transferring separate property to a jointly owned LLC is dissimilar from transferring separate property to joint tenancy and therefore the gift presumption should not apply.

¶26 Although Husband purchased the Menlo property during the marriage, he acquired it as his sole and separate property and Wife disclaimed any interest in the Menlo property. Accordingly, it was not "taken in the name of both spouses." About a year later, just after

establishing Kifissia, he transferred the Menlo property to Kifissia. The court found Kifissia was equally owned by Husband and Wife as community property. Because there is competent evidence supporting the court's conclusions regarding the parties' oral agreement and course of conduct, the court was within its discretion to conclude that, when Husband transferred the Menlo property to Kifissia a year after he purchased it as his sole and separate property, he intended a gift to the community. Thus, the court did not err by applying the gift presumption to Husband's transfer of the Menlo property to Kifissia. *See Osborne v. Osborne*, 1 CA-CV 19-0351 FC, 2020 WL 1062041, at *2–3, ¶¶ 7–11 (Ariz. App. Mar. 5, 2020) (mem. decision) (finding that the superior court properly imposed the gift presumption on a spouse who transferred separate property into a jointly owned LLC).

**¶27**        Husband also argues that the court erred by finding that commingling realty transmutes it into community property. However, that is not the basis of the superior court's decree. The court applied the gift presumption to the transfer of the Menlo property to Kifissia and found that it was a gift to the community. It did not find that the Menlo property was commingled such that it became community property.

### III.     The Traceability of Husband's Funds Does Not Impact the Community Property Nature of the AmTrust CD.

**¶28**        Husband argues the court erred in ruling that the AmTrust CD was community property because the funds are traceable as Husband's separate property. We review the superior court's characterization of property as separate or community *de novo*. *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). When separate property is commingled with community property, "the entire fund becomes community property 'unless the separate property can be explicitly traced.'" *Kim v. Pak*, 258 Ariz. 594, 597, ¶ 9 (App. 2024) (citation omitted).

**¶29**        The superior court found that the parties had an oral agreement to each own 50% of Katina Saffron, regardless of initial monetary contribution. Husband transferred the Saffron property into Katina Saffron subject to that agreement. Upon the sale of the Saffron property, the sale proceeds were deposited in Katina Saffron's bank account and then used to purchase the AmTrust CD in the name of both Husband and Wife. Whether the AmTrust CD was community property or the separate property of both Husband and Wife, the result is the same: each party owned 50% of those funds. The court did not err in finding that the AmTrust CD was community property.

¶30 Husband also asserts that the $341,183.20 equalization payment was too high because it was more than half of the balance of the AmTrust CD. But the decree found that Husband owed Wife only $300,742.20 to equalize the AmTrust CD. The rest of the $341,183.20 is accounted for in other sections of the decree and Husband fails to articulate how the court's calculations are incorrect.

## IV. The Superior Court Did Not Err in Referring to Findings From a Temporary Orders Hearing.

¶31 Husband argues that the court improperly relied on findings from the temporary orders hearing regarding the amount owed to Wife for equalization. He cites to A.R.S. § 25-316(D)(1), which states that a temporary order "[d]oes not prejudice the rights of the parties . . . to be adjudicated at subsequent hearings in the proceedings."

¶32 But the court made its own findings following trial. It simply referred to the temporary orders to support that Husband had previously deposited $341,183.20 into a joint account, and that this amount included the payment owed for the AmTrust CD. We are unaware of any authority prohibiting a court from referencing temporary orders in a dissolution decree.

¶33 Husband then contends that by relying on the temporary orders, the superior court improperly bifurcated the divorce proceedings. He argues that the court may not dissolve the marriage and then retain jurisdiction to divide property at a later date, citing *Larchick v. Pollock*, 252 Ariz. 364 (App. 2021).

¶34 Husband is correct that the court may not bifurcate proceedings by retaining jurisdiction after dissolving a marriage to divide property later, *Larchick*, 252 Ariz. at 367, ¶¶ 11–13, but he does not show how that occurred here. The temporary orders did not dissolve the marriage, they ordered Husband to deposit the monies into an account to be held until the dissolution trial, where the final determination on property was made.

## V. The Court Did Not Pierce the Corporate Veil.

¶35 Husband argues that there was no evidence to support piercing the corporate veil of the LLCs. Piercing the corporate veil occurs when the court allows a creditor to reach corporate assets to repay a member's individual debt. *See Leo Eisenberg & Co., Inc. v. Payson*, 162 Ariz. 529, 534 (1989) ("[T]he doctrine of 'piercing the corporate veil' applies only

to plaintiffs who seek recovery against the personal assets of corporate shareholders or directors."); *see also Standage v. Standage*, 147 Ariz. 473, 476 (App. 1985) ("[A]ssets of a validly formed corporation should be distinct and protected from the debts of individual shareholders."), *superseded by statute on other grounds*, 1996 Ariz. Legis. Serv. ch. 145, § 9 (S.B. 1216), *as recognized in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014).

**¶36**        The court here divided community and separate property between Husband and Wife; it did not give Husband's LLC assets to Wife to repay a personal debt. Husband has not shown how the division of the LLCs in the decree constituted piercing the corporate veil and has thus not shown error.

## VI.        Evidence of an Oral Agreement Was Provided.

**¶37**        Husband argues that there was no evidence to support the court's finding that the parties had an agreement to split their LLCs 50/50. We will defer to the superior court's factual findings if they are supported by competent evidence. *Borja*, 254 Ariz. at 313, ¶ 10. We do not reweigh the evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009).

**¶38**        As noted above, the court heard Wife's testimony about the parties' agreement and course of conduct. Testimony is evidence. *See Maricopa Cnty. Juv. Action No. JV131701*, 183 Ariz. 481, 482 n.1 (App. 1995) ("In a contested hearing, testimony is evidence from a witness who is under oath and subject to cross-examination."). Although Husband testified that they did not have an agreement, we do not reweigh evidence or determine the credibility of witnesses. *Hurd*, 223 Ariz. at 52, ¶ 16. The court's factual findings about an oral agreement were supported by the record.

**¶39**        Husband also argues that testimony of an oral agreement cannot be used to prove a prenuptial or real estate sale agreement. Husband did not bring these arguments at trial or object to Wife's testimony on this basis. This argument, brought for the first time on appeal, is waived. *Sobol v. Marsh*, 212 Ariz. 301, 303, ¶ 7 (App. 2006) ("As a general rule, a party cannot argue on appeal legal issues and arguments that have not been specifically presented to the trial court.").

## VII.        The Parties Agree that No Clarification of the Court's Tax Order Is Necessary.

**¶40**        In his Opening Brief, Husband argued that the court erred in ordering him to pay Wife's 2022–2025 taxes. The decree ordered Husband to turn over tax documents Wife needed to prepare her taxes, but also

ordered that "[Husband] shall assume, pay, indemnify and hold [Wife] harmless from any additional taxes, interest, penalties, or assessments, including legal accounting, and/or audit expenses, associated with any federal and state income tax returns for the tax periods 2022-2025."

¶41 In her Answering Brief, Wife conceded that she must pay half of any capital gains taxes for the sale of jointly owned properties during this time frame. She also clarified that her requested relief was limited to tax liability for rental income and distributions from the LLCs resulting from the withholding of tax documents, not for any and all tax liability. At oral argument, both parties agreed that no further clarification of the superior court's order is necessary.

## CONCLUSION

¶42 For the foregoing reasons, we affirm. Wife requests attorneys' fees under ARCAP 21(a) and A.R.S. § 25-324. In the exercise of our discretion, after considering the reasonableness of the parties' positions and their financial resources, we award Wife a portion of her fees. We also award Wife her costs upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

¶43 Husband requests attorneys' fees in his Reply Brief "as a sanction" on Wife for statements made in her Answering Brief. However, Husband did not cite a rule or statutory basis to support his request, and we decline to impose his requested sanction. *See Sotomayor v. Sotomayor-Muñoz*, 239 Ariz. 288, 291, ¶ 13 (App. 2016) (denying a request for a sanction on appeal when there was no statutory basis given and it was not established that a sanction was appropriate).



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR